876 So.2d 614 (2004)
Nneka WEST, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-2027.
District Court of Appeal of Florida, Fourth District.
June 16, 2004.
Rehearing Denied July 30, 2004.
Carey Haughwout, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
*615 KLEIN, J.
Appellant was convicted of first degree murder and contends that the trial court should have suppressed her confession because her Miranda warnings were inadequate. We reverse.
In March, 2001, appellant was arrested, and after being read what purported to be a Miranda warning, admitted her involvement in a plan which resulted in the victim being murdered. At a hearing on her motion to suppress, a detective testified that he read appellant her rights from a standard Broward County Sheriff's Office Miranda form. He did not inform appellant that she was entitled to have counsel present during questioning or that she could stop the interrogation at any time during questioning. The detective explained:
I told her, you have the right to remain silent, that anything that you say can be used against you in a court of law. You have the right to talk to a lawyer and have a lawyer present before any questioning and if you cannot afford a lawyer, one will be appointed to represent you or for any questions if you wish. And I asked her, do you understand the rights that we just read and that is where she initialed, yes.
Q. That word yes, sir, is that your handwriting or Ms. West's handwriting?
A. No, that's Nneka's, that's Ms. West's handwriting.
Q. After that at the end of the rights waiver it says, I see where it says Nneka West. Who put Nneka West's name in?
A. Ms. West.
Q. Could you make out what it says after that?
A. It says, I, the person you're meeting with, and Ms. West had printed her name, have read this statement of my rights or had it read to me and I understand what my rights are. With theses [sic] rights in mind, I am willing to answer questions without a lawyer present. This waiver of rights is signed of my own free will without any threats or promises having been made to me.
As to the first ground of appellant's motion to suppress, that she was not advised of her right to have an attorney present during questioning, Miranda v. Arizona, 384 U.S. 436, 471-72, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held:
[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation. ... [emphasis supplied].
With specific reference to the failure to advise a defendant of the right to have a lawyer present during interrogation, the Miranda court further stated:
As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.
Id. at 471, 86 S.Ct. 1602.
There is authority supporting the view that a Miranda warning which fails to advise of the right to counsel during interrogation makes a confession inadmissible as a matter of law. United States v. Bland, 908 F.2d 471 (9th Cir.1990); United States v. Oliver, 505 F.2d 301 (7th Cir.1974); Chambers v. United States, 391 F.2d 455 (5th Cir.1968). See also, Thompson *616 v. State, 595 So.2d 16, 17 (Fla.1992) (appears to hold that the failure to advise defendant that if he could not afford an attorney the state would provide one at no cost rendered confession inadmissible as a matter of law).
In Miranda, with reference to a situation in which no warning was given, the Court stated:
The Fifth Amendment privilege is so fundamental to our system... and the expedient of giving an adequate warning ... so simple, [that] we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given.
Id. at 468.
At the hearing on the motion to suppress, in which the state had the burden of proving by a preponderance of the evidence that appellant waived her rights, Ramirez v. State, 739 So.2d 568 (Fla.1999), the evidence centered on whether appellant was of sufficient intelligence to waive her rights. Appellant, who had never before been arrested, scored sixty-one on an IQ test, indicating that she was mildly retarded. Whether she had the intellectual capacity to intelligently waive her rights was disputed by experts. Without addressing the facial inadequacy of the warning, the trial court denied the motion to suppress, finding that under the totality of the circumstances appellant understood her rights and knowingly and intelligently waived them.
The problem with the trial court's finding is that it overlooks that appellant was not informed that she was entitled to have counsel present during interrogation or that she could stop the interrogation at any time. Nor did the state produce evidence that appellant knew this and knowingly waived these rights. Her confession should accordingly have been suppressed.
We therefore reverse for a new trial.
WARNER, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
My reading of the case law is that the law is flexible in the form that Miranda warnings are given, but rigid as to their required content.
It is unusual that a problem concerning the content of Miranda warnings has arisen in this day and age. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was decided thirty-eight years ago. A recent Westlaw search revealed that Miranda has been cited 42,046 times. Declining the invitation to overrule Miranda, the United States Supreme Court wrote that "Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture." Dickerson v. United States, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).
Most law enforcement agencies comply with Miranda without incident, since Miranda has not proved to be a roadblock to effective law enforcement. A recent article concludes that "[t]here is no good evidence that Miranda has substantially depressed confession rates or imposed significant costs on the American criminal justice system." George C. Thomas III & Richard A. Leo, The Effects of Miranda v. Arizona: "Embedded" in Our National Culture? 29 CRIME & JUST. 203 (2002).
The consensus of the first generation (1966-73) of empirical scholarship on the effect of Miranda,"was that the Miranda rules had only a marginal effect on the *617 ability of the police to elicit confessions and on the ability of prosecutors to win convictions, despite the fact that some detectives continued to perceive a substantial Miranda impact." Id. at 238.
Beginning in 1996, the second generation of Miranda studies "have generated considerable interpretive disagreement, debate, and commentary." Id. at 239. Thomas and Leo observed that
there appears to be relatively little dispute among second-generation researchers on several aspects of Miranda's real-world effects. First, police appear to issue and document Miranda warnings in virtually all cases. Second, police appear to have successfully "adapted" to the Miranda requirements. In practice, this means that police have developed strategies that are intended to induce Miranda waivers. Third, police appear to elicit waivers from suspects in 78-96 percent of their interrogations, though suspects with criminal records appear disproportionately likely to invoke their rights and terminate interrogation. Fourth, in some jurisdictions police are systematically trained to violate Miranda by questioning "outside Miranda"  that is, by continuing to question suspects who have invoked the right to counsel or the right to remain silent. Finally, some researchers have argued that Miranda eradicated the last vestiges of third-degree interrogation present in the mid-1960s, increased the level of professionalism among interrogators, and raised public awareness of constitutional rights.
Id. at 244-45 (internal citations omitted). The article concludes that "what the first-generation researchers suggested of their era may be true of ours: Miranda's impact in practice may be virtually negligible." Id. at 245.
The requirement of Miranda for the warning at issue in this case is not open to the wiggle room of creative interpretation.
As Judge Klein writes in the majority opinion, Miranda explicitly holds that as "an absolute prerequisite to interrogation," a suspect in custody "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." 384 U.S. at 471, 86 S.Ct. 1602 (emphasis added). Similar to the warning on the right to remain silent, the Supreme Court chose the requirement of a specific warning on the right to counsel as a "clearcut fact," to avoid "[a]ssessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, [which] can never be more than speculation." Id. at 468-69, 471-72, 86 S.Ct. 1602.
In California v. Prysock, 453 U.S. 355, 360, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Supreme Court held that the Miranda warnings need not be a "talismanic incantation" from the case, so long as the rights are adequately conveyed. The Court noted that it had "never indicated that the `rigidity' of Miranda extends to the precise formulation of the warnings given a criminal defendant." Id. at 359, 101 S.Ct. 2806. The Court emphasized that the police had "fully conveyed" to the defendant "his rights as required by Miranda." Id. at 361, 101 S.Ct. 2806. The Court observed that Prysock did not involve the right at issue in this case. Id. ("This is not a case in which the defendant was not informed of his right to the presence of an attorney during questioning....").
Most federal courts of appeals "have recognized the importance of informing suspects that they have the right to have a lawyer present prior to and during interrogation." Brown v. Crosby, 249 F.Supp.2d 1285, 1306 (S.D.Fla.2003) (cases cited); see *618 also United States v. Noti, 731 F.2d 610, 614-15 (9th Cir.1984); Martin J. McMahon, Annotation, Necessity that Miranda Warnings Include Express Reference to Right to Have Attorney Present During Interrogation, 77 A.L.R. FED. 123, 131-35 (1986).
A few courts have held that when omitted from Miranda warnings, the right to a lawyer "during interrogation" may be inferred. See People v. Valdivia, 180 Cal.App.3d 657, 226 Cal.Rptr. 144, 148 (1986); State v. Butzin, 404 N.W.2d 819, 825 (Minn.Ct.App.1987). These cases appear to contravene Miranda's language that the right be explicitly given and that "[n]o amount of circumstantial evidence that a person may have been aware of this right will suffice to stand in its stead." Miranda, 384 U.S. at 471-72, 86 S.Ct. 1602.
Nothing in any Supreme Court opinion suggests that it has relaxed the rigidity of Miranda regarding the content of the required warnings. At least three justices have expressed their concern about a Miranda warning identical to the one in this case, also arising from Broward County. In a statement accompanying a denial of a petition for writ of certiorari, Justice Breyer wrote:
Although this Court has declined to demand "rigidity in the form of the required warnings," California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), the warnings given here say nothing about the lawyer's presence during interrogation. For that reason, they apparently leave out an essential Miranda element. 384 U.S., at 470, 86 S.Ct. 1602.
Because this Court may deny certiorari for many reasons, our denial expresses no view about the merits of petitioner's claim. And because the police apparently read the warnings from a standard-issue card, I write to make this point explicit. That is to say, if the problem purportedly present here proves to be a recurring one, I believe that it may well warrant this Court's attention.
Bridgers v. Texas, 532 U.S. 1034, 121 S.Ct. 1995, 149 L.Ed.2d 779 (2001).