898 So.2d 1078 (2005)
John RIPLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-4733.
District Court of Appeal of Florida, Fourth District.
March 23, 2005.
*1079 Fred Haddad of Fred Haddad, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, C.J.
In an appeal from a conviction for first-degree murder, Ripley contends that the trial court erred in denying his motion to suppress evidence and his confession because of an unlawful arrest and inadequate Miranda warnings. We reverse.
While Broward police were investigating a murder, they began to consider Ripley as a suspect. Desiring to question him about the matter, detectives telephoned Ripley in Palm Beach County and identified themselves as Broward County officers. They scheduled a voluntary meeting at his house. From the phone conversation, the officers believed Ripley might be the shooter but they lacked probable cause to arrest him. Delayed by their superiors in approving their visit with Ripley, the detectives waited before traveling to his home. The officers were not deputized in Palm Beach County and, lacking probable cause, had no arrest warrant for their visit with Ripley.
Arriving at Ripley's driveway, they saw the garage door in the process of opening. The officers thereupon drove one of their vehicles behind Ripley's, where they stopped and blocked any movement. Ripley and his two children got out of their vehicle. In uniform and with their guns and badges clearly visible, the detectives approached Ripley. Ripley told the detectives that he wanted to take his children in his own vehicle to his parent's house. The detectives refused to let him do so.
At the instigation of the officers, Ripley got into the detective's vehicle without resisting. His children were placed in another detective's vehicle. As Ripley sat in the police vehicle one of the detectives asked him: "so where's the gun?" Ripley responded:
"It's not here. Just let me get my kids to my parent's house. And then when we get to your office, we can sit down and talk."
The officers then proceeded to take Ripley's children to their grandparent's house. En route the detective told Ripley that he should "clear the air and straighten things out." Ripley began making incriminating statements. One of the detectives stopped him and read the standard Broward County Sheriff's Office Miranda rights card aloud.
At the station the detectives did not reinstruct Ripley as to the Miranda rights but instead continued to talk to him for nearly an hour. Thereafter the police recorded a statement by Ripley. Essentially he told the detectives that he got his gun, loaded it, and went to he victim's house to kill him because the victim and Ripley's wife had had sexual relations. The statement ultimately led the police to recover the gun and some ammunition.
Ripley moved to suppress his confession, as well as all the evidence found as a result of his confession, on the grounds that the detectives were acting outside their jurisdiction, that they lacked probable cause when they took him into custody, rendering his arrest unlawful, and that his custodial interrogation was invalid on account of the Broward Sheriff's use of a disapproved form for Miranda warnings.
The trial court denied the motion to suppress. The court held that the encounter at Ripley's house was voluntary, and that at no time was Ripley in custody until the detectives placed him under arrest after his recorded statement. The court added that even if Ripley was in custody when he was first advised of his Miranda *1080 rights, the detectives had made a valid citizen's arrest outside their jurisdiction.
A person is not seized for purposes of the Fourth Amendment "[i]f a reasonable person would feel free to terminate the encounter." United States v. Drayton, 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). The question presented here is whether a reasonable person:
(1) who is confronted by three police officers who have blocked his attempt to leave his home;
(2) whose request to take his children to his parent's house in his own vehicle is denied by police;
(3) who is questioned about the location of the gun used in a murder as though they have already determined that he knows where the weapon may be found;
(4) who is administered his Miranda rights; and
(5) who is taken in handcuffs to the police station and confined in an interview room
would consider his freedom curtailed to the degree of an actual arrest. We think as a matter of law such a person would perceive the encounter as anything but voluntary, that it was forced rather than consensual, and that he was under arrest. In United States v. Poitier, 818 F.2d 679, 683 (8th Cir.1987), cert. denied 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988) the court said:
"Although the encounter ... began as a consensual one, we conclude that when the agents stated that they suspected Poitier of carrying drugs and read her Miranda rights, at that point a reasonable person would not have felt free to leave. The accusation coupled with the Miranda warnings, created a sufficient show of authority to effectively restrain Poitier's freedom of movement."
In applying the same reasoning to the facts, we find that Ripley was taken into custody in Palm Beach County when the Broward County detectives prevented him from going about his business and placed him in their vehicle. We further conclude that the arrest was unlawful because the officers were acting outside their jurisdiction and because they lacked probable cause.
The court's holding that the detectives conducted a valid citizen's arrest because they were not operating "under the color of law" is inconsistent with Florida cases. Unlike Phoenix v. State, 455 So.2d 1024, 1024 (Fla.1984), here the detectives began interrogating Ripley about the location of the gun, took control over the disposition of Ripley and his two children, and proceeded to begin the questioning of Ripley without proper Miranda warnings.
One of the detectives testified that when they went to Ripley's house in Palm Beach County they knew they did not have probable cause to arrest him; they had only a reasonable suspicion that he might be involved. Only after Ripley responded to the improper questioning of the officers about the location of the gun did the detectives finally have probable cause to make a formal arrest. During the encounter, they were acting as police officers do under color of law to gather evidence to make an arrest. In fact that was the very purpose for their visit to Ripley. See State v. Sills, 852 So.2d 390, 392 (Fla. 4th DCA 2003) ("The `under color of office' doctrine applies only to prevent law enforcement officials from using the powers of their office to observe unlawful activity or gain access to evidence not available to a private citizen.").
As we have indicated, the Miranda warnings given to Ripley were legally insufficient. At the suppression hearing, the detective testified that he read the Miranda *1081 warning from what was then the standard Broward County Sheriff's Office card used for that purpose. The warning then in use did not advise Ripley that he was entitled to have counsel present during questioning or that he could stop the interrogation at any time during questioning. We have previously held that this form is legally inadequate to comply with the requirements of Miranda. Franklin v. State, 876 So.2d 607, 608 (Fla. 4th DCA 2004); West v. State, 876 So.2d 614, 616 (Fla. 4th DCA 2004); Roberts v. State, 874 So.2d 1225, 1229 (Fla. 4th DCA 2004).
Because the arrest of Ripley was unlawful, and because the Miranda warning they attempted to administer to him while unlawfully in custody was legally insufficient to inform him of his constitutional rights, we conclude that the trial court erred in refusing to suppress the evidence gleaned thereby. It follows that it was error to admit Ripley's videotaped statement as well as the physical evidence, for they were the fruits of his unlawful arrest.
"[The] exclusionary sanction applies to any `fruits' of a constitutional violation-whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention."
United States v. Crews, 445 U.S. 463, 470, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
Reversed for new trial.
SHAHOOD and TAYLOR, JJ., concur.