930 So.2d 802 (2006)
Nickulis GILLIS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-2340.
District Court of Appeal of Florida, Third District.
May 31, 2006.
*804 Bennett H. Brummer, Public Defender, and Dorothy F. Easley, Special Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Maria T. Armas, Assistant Attorney General, for appellee.
Before GERSTEN and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
ROTHENBERG, Judge.
The defendant, Nickulis Gillis ("Gillis"), who was convicted of second degree murder with a firearm and armed robbery, appeals his convictions, alleging that he is entitled to a new trial based upon the trial court's denial of his motions to suppress evidence and the trial court's denial of his request to admit certain evidence. As we find no error regarding the complained-of rulings, we affirm.

THE IDENTIFICATIONS
We begin by addressing the defendant's motion to suppress the identification testimony. A brief summary of the evidence is as follows. On July 25, 2002, at approximately 9:00 a.m., Daniel Martin was shot and killed at a gas station, where he stopped to obtain gas for his moped. Ashley Yuinigo, a sixteen-year-old passenger on Daniel's moped, witnessed the shooting. She identified the defendant as the shooter, and testified that, when she saw the defendant at the station, she instantly recognized him. She explained that she had seen the defendant between seven and ten times during the two-month period preceding the shooting, in an area of Opa Locka commonly known as "the triangle," and that, on each occasion, she was able to observe him for ten to fifteen minutes. Ms. Yuinigo also testified that the defendant approached Daniel, pulled out a gun, and demanded Daniel's property. The next thing she heard was a shot, and then she saw Daniel fall to the pavement. When the detective showed her a picture of the defendant, she immediately identified him as the shooter and had no doubt regarding her identification.
Herman Thomas, who was cleaning inside the station prior to the shooting, testified that he initially saw the defendant outside. He explained that he knew the defendant because he saw him regularly (approximately once a week for the past year) at the station. When Mr. Thomas went outside and began cleaning the grounds surrounding the gas station, he heard loud voices. He recognized the defendant's voice as the voice demanding the victim's property, and then he heard a "bang." Mr. Thomas immediately ran in the direction of the "bang," and found Daniel on the ground, where he had fallen after being shot. He identified the shooter as "Nickulis Gillis," and when shown his photograph by the police, he positively identified the defendant as the shooter.
The defendant claims that the trial court erred in denying his motions to suppress the identification evidence because the use of a single photograph, which was clearly identifiable as a "mug shot," was impermissibly suggestive. While we agree, as did the trial court, that the procedure employed was unnecessarily suggestive, we conclude that, because there is no substantial likelihood of irreparable misidentification, the trial court did not err in denying the motion to suppress the identifications. See Fitzpatrick v. State, 900 So.2d 495, 517-18 (Fla.2005)(reaffirming the two-prong test for suppression of an out-of-court identification which requires a determination of "`(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all of the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.'") *805 (quoting Rimmer v. State, 825 So.2d 304, 316 (Fla.2002)). Pursuant to Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the following factors should be considered: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.
The trial court properly considered the factors articulated in Neil v. Biggers, and concluded that there was not a substantial likelihood that Ashley Yuinigo's identification of the defendant was incorrect since (1) she had seen the defendant so many times in that general area prior to the shooting, (2) she was familiar with him, (3) she observed him in broad daylight under circumstances where her degree of attention was high, and (4) she was certain of her identification. Likewise, the trial court concluded that Henry Thomas' identification of the defendant was even stronger and more reliable, as he had seen the defendant at least once a week for a year and had seen him several times during the day prior to the shooting. Mr. Thomas had also demonstrated that his attention was focused, as he was able to describe the clothing and shoes the defendant was wearing.[1]
A trial court's rulings on a motion to suppress are clothed with a presumption of correctness, Fitzpatrick, 900 So.2d at 513, and its findings of fact are not subject to reversal if supported by competent, substantial evidence, Williams v. State, 769 So.2d 404, 405 (Fla. 2d DCA 2000). In the instant case, as the trial court's findings are supported by competent, substantial evidence, and the familiarity of the witnesses with the defendant constitutes an independent basis for identification, uninfluenced by an otherwise suggestive procedure, we affirm. See Fitzpatrick v. State, 900 So.2d 495 (Fla.2005)(finding that, while the use of a single photograph for identification was unduly suggestive, the witness had ample opportunity to closely observe the defendant, which served as an independent basis for identification, uninfluenced by the suggestive procedure); Rimmer v. State, 825 So.2d 304 (Fla.2002)(finding that the witness had an independent basis for identification based upon her ability to see and to accurately describe the defendant for approximately twenty minutes); Washington v. State, 653 So.2d 362 (Fla.1994)(finding that, while the use of a single photograph to obtain an identification was unduly suggestive, the witness' familiarity with the defendant provided an independent basis for the identification, uninfluenced by the suggestive procedure).

THE DEFENDANT'S STATEMENT
The defendant asserts that the trial court erred in denying his motion to suppress his statement, based upon two claimed infirmities to the Miranda[2] form used to advise him of his rights. The Miami-Dade Police Department used the following Miranda form to advise the defendant of his rights prior to obtaining the statement which was introduced at trial:
(a) You have the right to remain silent and you do not have to talk to me if you do not wish to do so. You do not have to answer any of my questions. Do you understand that right?

*806 (b) Should you talk to me, anything which you might say may be introduced into evidence in court against you. Do you understand?
(c) If you want a lawyer to be present during questioning, at this time or anytime hereafter, you are entitled to have a lawyer present. Do you understand that right?
(d) If you cannot afford to pay for a lawyer, one will be provided for you at no cost if you want one. Do you understand that right? Knowing these rights are you willing to answer my questions without having a lawyer present?
The defendant claims that the form used was defective as it did not advise the defendant that he had the right to consult with an attorney prior to questioning, or that he had the right to terminate the interview at any time. Regarding the first claimed deficiency, the defendant recognizes that the issue has previously been raised and decided contrary to his position. See Chavez v. State, 832 So.2d 730, 750 (Fla.2002); Johnson v. State, 750 So.2d 22, 25 (Fla.1999)(expressly rejecting as error the failure of Metro-Dade Police Department warning form to inform an accused of the right to counsel prior to questioning)(citing Cooper v. State, 638 So.2d 200, 201 (Fla. 3d DCA 1994)). Thus, we conclude that the form used by the Miami-Dade Police Department, which advises the accused that he/she has the right to an attorney during questioning and any time thereafter, and, which tracks the language of Miranda, is sufficient.
The defendant also claims that, because he was not advised that he could terminate the questioning at any time, his statement should be suppressed. In support of this position, the defendant relies on Ripley v. State, 898 So.2d 1078, 1079 (Fla. 4th DCA 2005); West v. State, 876 So.2d 614 (Fla. 4th DCA 2004), review denied, 892 So.2d 1014 (Fla.2005); Franklin v. State, 876 So.2d 607 (Fla. 4th DCA 2004), cert. denied, 543 U.S. 1081, 125 S.Ct. 890, 160 L.Ed.2d 825 (2005); and Roberts v. State, 874 So.2d 1225 (Fla. 4th DCA 2004), review denied, 892 So.2d 1014 (Fla. 2005). We note that in Ripley and West, the Fourth District concluded that the Miranda form used by the Broward Sheriff's Office was defective for failing to inform a suspect that he could stop questioning at any time, but that the Fourth District did not specifically address this issue in Franklin and Roberts. We, however, take a very different view than does the Fourth District, and we conclude that, because the Miranda form used informs the accused that he/she does not have to answer any questions posed by the officer, implicit in this warning is the fact that the accused may invoke his right to remain silent at any time during the interrogation or to terminate further questioning during the interrogation. Thus, we reject the defendant's argument to the contrary, and conclude that the Miranda form used properly advised the defendant of his rights, and that when he gave his statement to law enforcement, he did so after a clear understanding and waiver of his Fifth Amendment rights.

ADMISSION OF THE DEFENDANTS SHOES OVER HIS OBJECTION
The defendant claims that the trial court erred in denying his motion to suppress evidence regarding a pair of red hightop sneakers seized from his jail cell, which was identified by Mr. Thomas as the sneakers worn by the robber who murdered Daniel Martin. Mr. Thomas described the clothing of the gunman and specifically described the shoes the gunman was wearing as red hightop sneakers. Based upon this description, the State attempted to ascertain whether the defendant, who had been arrested and was being detained in the Miami-Dade County *807 Jail, was in possession of the shoes described by the witness. A property room supervisor confirmed that the defendant had not received any footwear from any source after he was booked into the jail, and thereafter, a correctional officer checked the defendant's cell and observed a red pair of sneakers sitting under the defendant's bunk. Based upon this information, the State obtained a search warrant, seized the sneakers, and introduced them at trial after they were positively identified by Mr. Thomas.
The defendant argues that the search of his cell by a correctional officer upon the request by the State, prior to obtaining a warrant, violated his right to privacy and his Fourth Amendment right against a warrantless search absent exigent circumstances. We disagree. A public jail cell does not share the same privacy as an individual's home, car, office, or motel room. Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); State v. Smith, 641 So.2d 849 (Fla.1994). This is especially true regarding an arrestee's clothing and the personal effects found on his/her person at the time of his/her arrest. United States v. Chadwick, 433 U.S. 1, 14 n. 10, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); United States v. Edwards, 415 U.S. 800, 806, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974)("When it became apparent that the articles of clothing were evidence of the crime for which Edwards was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered."); United States v. Caruso, 358 F.2d 184 (2nd Cir.)(holding that, once the accused is lawfully arrested and in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may be lawfully searched and seized without a warrant, even when a substantial period of time has elapsed between the arrest and processing and the seizure of the property, regardless of whether the property is found in the arrestee's cell or held under the arrestee's name in the property room), cert. denied, 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966); State v. Mejia, 579 So.2d 766, 767 (Fla. 3d DCA 1991)("Once the defendant is in custody, the items that were on his person at the time of his arrest may lawfully be searched and seized without a warrant....").
Affirmed.
NOTES
[1] The shoes Mr. Thomas described the defendant as wearing when the defendant shot Daniel, were subsequently seized pursuant to the execution of a search warrant in the jail cell where the defendant was being held pre-trial.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).