TAYLOR, J.
 

 Defendant, Fabian Moncrieffe, appeals his conviction for escape. Because the evidence failed to demonstrate that the defendant was validly arrested and in the lawful custody of the Lauderhill police at the time of his alleged escape, we reverse his conviction and sentence for escape.
 

 Defendant was charged by information with escape while in the lawful custody of the Lauderhill Police Department on July 27, 2005, in violation of section 944.40, Florida Statutes.
 
 [1]
 
 The facts and circumstances that led to the escape charge are detailed in an order entered by the trial court after multiple hearings on the defendant’s motion to suppress evidence. The court’s findings of fact are set forth below:
 

 On July 27, 2005, at approximately 5:30am, Sgt. Jimmy Patrizi, of the Sunrise Police Department, arrived at the Walgreens located at 2301 North University Drive in response to a complaint from the night manager that a patron was acting suspiciously. Sergeant Patri-zi entered the store and observed the Defendant at the register with two shopping carts. Sergeant Patrizi immediately left the store to consult with Officer Michael West, of the Sunrise Police Department, who just arrived at the scene. Moments later, the officers observed the Defendant exit the store without any merchandise and quickly walk across the parking lot.
 

 Officer West confronted the Defendant in the parking lot and immediately advised him of his
 
 Miranda
 
 rights. Officer West then asked the Defendant where he was going. The Defendant stated that he drove to the store in his girlfriend’s vehicle and that he was walking to a payphone to call his girlfriend since he forgot to bring money to the store. Sgt. Patrizi then conducted a pat down on the Defendant and discovered a bulky item in the Defendant’s pockets. Sgt. Patrizi told the Defendant to empty the contents of his pockets. The Defendant complied and placed a cell phone, keys to a Honda, and a wallet which contained four counterfeit bills on the hood of the police car. The Defendant was told to discard two used con
 
 *738
 
 doms and wrappers in his possession on the ground.
 

 Sgt. Patrizi testified that he walked over to the Honda and observed a driver’s license on the front passenger seat which obviously did not belong to the Defendant. Sgt. Patrizi then unlocked and searched the Honda. The warrant-less search of the vehicle revealed the driver’s license, some tools, a hat, and a pair of gloves. A further investigation of the driver’s license found in the Honda and the cell phone retrieved from the Defendant revealed that both items had been reported stolen from Mr. Jeffrey Mall, a resident of Tamarac Florida. The Defendant was subsequently arrested for loitering and prowling and was transported to Sunrise Police Department at 6:45am.
 

 Detective Michelle Fernandez, of the Broward Sheriffs Office, testified she was contacted by the Sunrise Police Department informing her that a person in their custody may have committed a crime in BSO’s jurisdiction. Det. Fernandez testified that she arrived at the Sunrise Police Station at approximately 8:00am to investigate the possible burglary or theft of items found in the Defendant’s possession. Detective Fernandez read the Defendant his
 
 Miranda
 
 rights and obtained a written
 
 Miranda
 
 waiver form before she spoke with the Defendant in the Sunrise Police station regarding the stolen property. Det. Fernandez confirmed that the cell phone belonged to Jeffrey Mall and subsequently obtained permission from him to look through the numbers in his cell phone’s record memory. The cell phone records revealed there were two numbers dialed at approximately 5:00am on the morning of July 27, 2005. Det. Fernandez called one of the numbers and spoke with Amanda McNutt. Ms. McNutt told Det. Fernandez that she had been raped early that morning at her residence and that she had reported the rape to the Lauderhill Police Department at approximately 6:00am. Ms. McNutt’s description of her assailant matched the Defendant’s physical description. Ms. McNutt also described certain tools and clothing that matched the clothing and tools taken from the vehicle the Defendant’s Honda.
 

 The trial court continued, making the following factual findings:
 

 Det. Fernandez testified that she then contacted the Lauderhill Police Department to inform them that they had a possible suspect for a sexual battery committed in their jurisdiction in custody. Officer Darrell King, of the Lauder-hill Police Department, arrived at the Sunrise Police Department. Det. Fernandez testified that she gave Officer King her probable cause affidavit because the Laudei'hill Police Department wanted to further interview the Defendant regarding the sexual battery. Det. Robert Clifford, of the Lauderhill Police Department, testified that Officer Darrell King, in cooperation with the Sunrise Police Department, took custody of the Defendant at approximately 12:25pm and transported him to the Lauderhill Police Department.
 

 Det. Clifford testified that he conducted a photo lineup, at approximately 1:00pm, with Ms. McNutt with photos provided by the Broward Sheriffs Office in which Ms. McNutt positively identified' the Defendant as her assailant. At approximately 2:21pm, Det. Clifford gave the Defendant an additional
 
 Miranda
 
 warning and obtained signed written
 
 Miranda
 
 waiver form. Det. Clifford and Det. Hackshaw conducted a taped interview with the Defendant in which he admitted to having consensual sexual relations with Ms. McNutt. The
 
 *739
 
 Defendant was subsequently charged with sexual battery and burglary with a battery.
 

 Officer Corey Pendergrass, of the Lauderhill Police Department, transported the Defendant to the Broward Sheriffs Office’s Tamarac holding facility, but the Defendant was refused admittance after stating he was still under the influence of xanax. The Defendant was then transported to the Florida Medical Center where he escaped while still in the custody of Officer Pender-grass. The Defendant was apprehended approximately two and a half weeks later and was charged with the additional count of escape.
 

 In the defendant’s Second Amended Motion to Suppress Illegally Seized Evidence, the defendant alleged, among other things, that the defendant was not in the legal custody of the Lauderhill Police Department when he fled before being brought to the Broward County Jail. According to the defendant, Lauderhill Police Officer King seized him outside of his jurisdiction when he went to the City of Sunrise to pick him up and transport him to the Lauderhill Police Department.
 

 At the suppression hearing, Broward Sheriffs Detective Fernandez testified that after she spoke by phone to the alleged rape victim and connected the defendant to the crime in Lauderhill, she spoke to a Lauderhill detective, who advised her that Officer King would be coming over to Sunrise to pick up the defendant and transport him to the Lauderhill Police Department. She prepared a probable cause affidavit and delivered it to Officer King for eventually booking the defendant into the Broward County Jail.
 

 Detective Fernandez acknowledged that Sunrise and Lauderhill have independent municipal police departments, and that if a crime occurs in Lauderhill, the Lauderhill police can go outside their city to make an arrest only if they are in hot pursuit or have an arrest warrant; neither circumstance was present here.
 
 [2]
 
 The state argues that the Lauderhill police were authorized to take the defendant into custody outside their jurisdiction because officers from the different agencies were cooperating across jurisdictional lines. Relying on
 
 Sanguine v. State,
 
 895 So.2d 1198 (Fla. 3d DCA 2005), the state argued that the defendant could properly be transported from one jurisdiction to another based on the cooperative efforts of the officers from different jurisdictions during the investigation. However, at the evidentiary hearings, the state did not introduce any mutual aid agreements that were in existence at the time of the defendant’s arrest which purportedly provided legal authority for a Lauderhill officer to make a warrantless arrest of the defendant outside of his jurisdiction.
 

 The defendant challenged the validity of his arrest by the Lauderhill police in a sworn motion to dismiss, as well as in his motion to suppress evidence. He argued that he could not be convicted of escape from the Lauderhill police because the state failed to prove he was in their lawful custody at the time of his escape.
 

 Ultimately, the trial court granted the motion to suppress in part and denied it in part, finding that the defendant’s initial search and arrest by the Sunrise Police
 
 *740
 
 Department for loitering and prowling were illegal because the officers lacked probable cause, but that the defendant’s subsequent arrest by the Lauderhill Police Department for sexual battery and burglary with a battery was lawful. Accordingly, the court ordered that “all evidence obtained from the time of the Defendant’s illegal arrest at Walgreens to the time the Defendant was transported to the Lauder-hill Police Department should be suppressed. However, all evidence relating to [victim’s] identification of the Defendant at the photo lineup and all evidence acquired after the photo lineup is not ‘fruit of the poisonous tree.’ ” The court also held that the defendant’s arrest for sexual battery and other charges, including escape, was sufficiently attenuated such that it did not need to be suppressed.
 

 The court found that, based on the
 
 Fri-erson
 

 [3]
 

 factors, the victim’s identification of the defendant at the photo lineup as the man who raped her dissipated any taint caused by the defendant’s illegal arrest for loitering and prowling. The court further found that because the Lauderhill Police Department had sufficient probable cause to arrest the defendant for sexual battery and burglary with a battery based upon the victim’s testimony and identification of the Defendant at the photo lineup, the defendant was in the lawful custody of the Lauderhill Police Department when he escaped.
 

 Following a jury trial, the defendant was convicted of escape and sentenced to ten years in prison, consecutive to the twenty-year sentence imposed for violation of probation.
 

 The defendant raises three points on appeal, but we address only his argument that his escape conviction cannot stand because the Lauderhill police were beyond their jurisdiction when they took him into custody in Sunrise, and that he therefore was not in their legal custody at the time of his escape.
 

 “Generally, an officer of a county or municipality has no official power to arrest an offender outside the boundaries of the officer’s county or municipality.”
 
 Porter v. State,
 
 765 So.2d 76, 78 (Fla. 4th DCA 2000) (citing
 
 Huebner v. State,
 
 731 So.2d 40, 44 (Fla. 4th DCA 1999)). Exceptions to this rule apply when an officer is acting as a private citizen or is in fresh pursuit.
 
 See Phoenix v. State,
 
 455 So.2d 1024, 1025 (Fla.1984) (explaining that law enforcement officials outside their jurisdiction “should not be any less capable ... of making a felony arrest than a private citizen,” nor have a greater power; however, law enforcement officials may not make citizen’s arrests under color of their office); § 901.25, Fla. Stat. (2005) (mandating that an arresting officer may arrest someone outside the officer’s jurisdiction if in fresh pursuit). Here, it is undisputed that Officer King was not acting as a private citizen, but rather “under the color of office,” and that he was not in fresh pursuit of the defendant when he took him into custody in Sunrise.
 

 The unlawful nature of custody is an affirmative defense which can be raised to a charge of escape.
 
 State v. Williams,
 
 444 So.2d 13, 15 (Fla.1984);
 
 Marquez v. State,
 
 450 So.2d 345, 345 (Fla. 2d DCA 1984). In this case, the evidence presented by the state, which demonstrated the unlawfulness of the defendant’s arrest and his ensuing confinement and custody by Lauderhill police, all of which arose out of the same facts and circumstances, established the defendant’s affirmative defense to the escape charge.
 
 See B.D.K. v. State,
 
 743 So.2d 1155, 1157-58 (Fla. 2d DCA
 
 *741
 
 1999) (holding that the state’s evidence of his unlawful arrest for loitering and prowling established the defendant’s affirmative defense of unlawful custody to the charge of escape and the trial court should have granted his motion for judgment of acquittal on that ground).
 

 Officer King, a municipal police officer acting under the color of his office, exceeded his authority by taking the defendant into custody outside the territorial limits of the officer’s jurisdiction without a warrant. The fact that there may have been probable cause to arrest the defendant is not controlling.
 
 See Brown v. State,
 
 623 So.2d 800, 802 (Fla. 4th DCA 1993) (stating that even though the facts would support a finding of probable cause to arrest, such a finding is not dispositive; “ ‘[flor there to be an escape, there must
 
 first
 
 be a valid arrest.’ ” (quoting
 
 Kyser v. State,
 
 533 So.2d 285, 287 (Fla.1988))).
 
 [4]
 

 In
 
 Ripley v. State,
 
 898 So.2d 1078, 1079 (Fla. 4th DCA 2005), we addressed an arrest made by Broward County Sheriffs deputies in Palm Beach County. Without probable cause or an arrest warrant, the deputies traveled to the defendant’s home in Palm Beach County to question him about a homicide.
 
 Id.
 
 They placed the defendant in a police car, read him
 
 Miranda
 
 warnings, and transported him to the police station, where they obtained a statement from him that led to the discovery of the murder weapon.
 
 Id.
 
 In reversing Ripley’s conviction, we held that the arrest was unlawful as the deputies were acting outside their jurisdiction and without probable cause.
 
 Id.
 
 at 1080-81. We also held that the arrest could not be justified as a citizen’s arrest because the officers were acting under color of law while gathering evidence.
 
 Id.
 
 at 1080.
 
 See also State v. Sills,
 
 852 So.2d 390, 391 (Fla. 4th DCA 2003) (affirming suppression order where Coconut Creek officers transported the defendant to his home in Lauderhill Lakes and obtained waiver of a search warrant).
 

 In sum, because the defendant was not in the lawful custody of the Lauderhill Police Department at the time he fled, we reverse his conviction and sentence for escape and remand with directions for discharge as to this charge. Because the defendant cannot be retried for this offense, we need not decide the remaining issues raised for reversal.
 

 Reversed.
 

 WARNER and MAY, JJ., concur.
 

 [1]
 

 . He was originally charged by information and amended information with sexual battery, burglary with a battery, and escape. However, the charges were severed, and the trial relevant to this appeal involved only the escape charge.
 

 [2]
 

 . As defendant points out, even if the Lauder-hill Police Department had obtained an arrest warrant for the defendant, they would have lacked authority to execute the warrant, because section 901.04, Florida Statutes (2005), directs that the warrant be executed only by the sheriff of the county in which the arrest is to be made unless the arrest is made in fresh pursuit.
 

 [3]
 

 .
 
 State v. Frierson,
 
 926 So.2d 1139 (Fla.2006).
 

 [4]
 

 . We further note that the defendant is not relying upon some technical deficiency or irregularity in a warrant under which he has been taken into custody.
 
 Cf. McGee v. State,
 
 435 So.2d 854 (Fla. 1st DCA 1983) (holding that defendant was in "lawful custody" so as to subject him to escape conviction where he was in custody of duly authorized law enforcement officials under the authority of ca-piases issued by the trial court).