IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

STATE OF FLORIDA,

      Appellant,

v.

                                   Case No.  5D22-21
                                   LT Case No. 2021-CT-000417-E

EDUARDO ARTURO TORRES,

      Appellee.
_____/

Opinion filed November 4, 2022

Appeal from the County Court
for Orange County,
Andrew L. Cameron, Judge.

Ashley Moody, Attorney General,
Tallahassee, and Richard Alexander
Pallas, Jr., Assistant Attorney
General, Daytona Beach, for
Appellant.

Stuart I. Hyman, of Stuart I. Hyman,
P.A., Orlando, for Appellee.


ON THE APPELLEE'S MOTION FOR REHEARING[1]

_____

[1] The appellee's motion for rehearing en banc that was embedded in
his motion for rehearing will be addressed in a separate order.

LAMBERT, C.J.

We deny the appellee's motion for rehearing. However, to correct a ministerial error in the court's prior opinion in this case, we withdraw that opinion and issue the following opinion in its place.

The State of Florida appeals an order entered by the trial court after an evidentiary hearing granting Eduardo Arturo Torres's ("the defendant") motion to suppress the results of a breath test because the municipal law enforcement officer was outside of his geographic jurisdiction when he requested that the defendant submit to this testing. As the relevant facts in the case, described below, are not in dispute, our review is de novo. *See State v. Furr*, 723 So. 2d 842, 844 (Fla. 1st DCA 1998) ("This court conducts *de novo* review of a trial court's application of the law to undisputed facts in a motion to suppress." (citing *Butler v. State*, 706 So. 2d 100, 101 (Fla. 1st DCA 1998))). For the following reasons, we reverse the order.

FACTS—

In the early morning of April 19, 2021, Officer Craig Campbell of the Winter Park Police Department was on duty in his patrol vehicle when he conducted a traffic stop of the defendant based upon the defendant's hazardous driving pattern. During this stop, Campbell observed that the

2

defendant smelled of alcohol, his eyes had "a glassy haze," and he swayed while exiting his car.

The defendant admitted to Campbell that he had consumed alcoholic beverages and thereafter agreed to submit to field sobriety exercises. Following these exercises, Officer Campbell arrested the defendant for the offense of driving a motor vehicle while under the influence of alcohol to the extent that his normal faculties were impaired ("DUI"). All of the foregoing events occurred in Winter Park.

Campbell then transported the defendant from Winter Park to the Orange County Breath Test Center in Orlando.[2] There, pursuant to Florida's implied consent law,[3] Campbell asked the defendant to submit to a breath

---

[2] Winter Park and Orlando are both located in Orange County.

[3] The implied consent law is codified at section 316.1932(1)(a)1.a., Florida Statutes (2021), and provides, in pertinent part,

> A person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages. The chemical or physical breath test must be incidental to a lawful arrest and

3

test, to which the defendant agreed. The test was administered by a civilian employee with the Orange County Sheriff's Department,[4] and the results showed that the defendant's blood alcohol level was at more than twice the legal limit in the State of Florida. The State later filed an information formally charging the defendant with DUI.

Following discovery, the defendant filed a motion to suppress the breath test results. He asserted that, under section 316.1932(1)(a)1., only a law enforcement officer could request the administration of a breath test and because Officer Campbell was outside the city limits of Winter Park when he requested the defendant submit to the breath test, at that point, Campbell was "nothing more than a private citizen." The defendant argued that, as a "private citizen," Campbell was not permitted under the implied consent statute to obtain or gather breath test evidence but that he improperly did so under the "color of [his] office"; thus, the results from the test should be suppressed. *See Knight v. State*, 154 So. 3d 1157, 1160 (Fla. 1st DCA 2014) ("When an officer unlawfully asserts official authority, either expressly or

administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages.

[4] The qualifications of this employee to administer the breath test are not an issue in this appeal.

4

implicitly, to gain access to evidence, that evidence must be suppressed.").

Following a hearing held on the defendant's motion to suppress at which Campbell was the only witness, the trial court announced that, based on *Phoenix v. State*, 455 So. 2d 1024 (Fla. 1984), *Mattos v. State*, 199 So. 3d 416 (Fla. 4th DCA 2016), and *State v. Sills*, 852 So. 2d 390 (Fla. 4th DCA 2003), it was granting the motion.[5]  It then contemporaneously signed a written order suppressing the breath test results.[6]

ANALYSIS—

As a general rule, "municipal law enforcement officers can exercise their law enforcement powers only within the territorial limits of the municipality." *Knight*, 154 So. 3d at 1159 (citing *Nunn v. State*, 121 So. 3d 566, 567 (Fla. 4th DCA 2013); *State v. Griffis*, 502 So. 2d 1356, 1357 (Fla. 5th DCA 1987)).  The narrow issue before us is whether, under the facts of the case, Officer Campbell nevertheless retained the power or authority to request that the defendant submit to a breath test as part of an ongoing DUI

---

[5] The trial court did not discuss the facts or holdings from these cases when explaining or announcing its ruling.

[6] The order signed appears to have been prepared in open court by a deputy clerk.  Although the document is titled "Order," its format is similar to a Court Minutes document as it contains other information unrelated to the suppression hearing.  Pertinent to the matter before us, the order simply states that the "intoxilyzer results" were suppressed for being "outside of jurisdiction."

investigation when Campbell was outside the territorial limits of his municipality. Although not fully explained in the written order, the reference to Officer Campbell being "outside of [his] jurisdiction" essentially determined that, as argued by the defendant, Campbell was a "private citizen" and thus, under Florida's implied consent law, no longer had the authority to make this request.

To provide context to the trial court's ruling, at common law, a private citizen could arrest an individual who committed a felony or a breach of the peace[7] in his or her presence. *Furr*, 723 So. 2d at 844–45; *State v. Phoenix*, 428 So. 2d 262, 265 (Fla. 4th DCA 1982), *approved*, 455 So. 2d 1024 (Fla. 1984). A law enforcement officer acting outside of the geographic limits of their municipality has these same arrest powers. *Cf. Phoenix*, 455 So. 2d at 1025 (observing that "[c]ommon sense dictates that law enforcement officials, when they are outside their jurisdictions, should not be any less capable, by virtue of their position, of making a felony arrest than a private citizen").

To be clear, the dispute here is not about Officer Campbell's DUI arrest of the defendant in Winter Park. The question is whether the breath test evidence was properly suppressed because Campbell, post-arrest, while

_____

[7] A DUI is considered a crime involving a breach of the peace. *See Edwards v. State*, 462 So. 2d 581, 582–83 (Fla. 4th DCA 1985).

6

outside of his territorial jurisdiction, used the color of his office to obtain this evidence that a private citizen, under the implied consent statute, could not have obtained. The color of office doctrine precludes a law enforcement officer who is outside of their territorial jurisdiction from using the power or color of the office to observe unlawful activity or to gain access to evidence that would not be available to a similarly-situated private citizen. *See Phoenix*, 455 So. 2d at 1025.

This doctrine, however, is not without its exceptions. One exception, as argued by the State, allows a municipal officer to continue to act or investigate outside of his or her geographic jurisdiction if the subject matter of the officer's investigation originates inside their city limits. *Knight*, 154 So. 3d at 1159; *Nunn*, 121 So. 3d at 568.[8] The State contends that this exception applies and the trial court erred in granting the motion to suppress because the subject matter of Officer Campbell's DUI investigation originated within his jurisdiction of Winter Park. Thus, the State argues that Campbell was lawfully permitted to continue his investigation at the Breath Test Center in

---

[8] Another exception is that an officer may exercise their authority outside of the territorial jurisdiction if in "fresh pursuit." *See Moncrieffe v. State*, 55 So. 3d 736, 740 (Fla. 4th DCA 2011) (recognizing that a municipal law enforcement officer may arrest an offender outside the boundaries of the municipality when acting in fresh pursuit). The parties agree that the fresh pursuit exception does not apply here.

Orlando and request that the defendant submit to a breath test.

The abbreviated reference in the written order to being "outside [of his] jurisdiction" and the trial court's reliance on *Phoenix*, *Mattos*, and *Sills* in its oral pronouncement granting the defendant's motion to suppress indicate that the court necessarily determined that the above exception to the color of office doctrine did not apply. As we explain below, we conclude that it does.

We begin our analysis with an examination of the three cases relied on by the trial court, which we find to be distinguishable from the facts in our case. First, the Florida Supreme Court's holding in *Phoenix* was that the color of office doctrine did not bar law enforcement officers from making a citizen's arrest outside of their jurisdiction, even after they had identified themselves as police officers, because the officers had not yet asserted their official positions for any other purpose. 455 So. 2d at 1024–25. *Phoenix* is inapposite here because Officer Campbell did not make a citizen's arrest.

Next, in *Mattos*, the defendant was arrested for committing a felony DUI. 199 So. 3d at 418. The offense both originated and was observed by the arresting municipal law enforcement officer outside of the officer's geographic jurisdiction. *Id.* Following the trial court's denial of the defendant's motion to suppress "all written and oral statements made [by him] to the police or other state agents," the defendant tendered a no contest

8

plea to the charge but with a reservation of rights regarding the denial of his suppression motion. *Id.*

On appeal, the Fourth District Court reversed that part of the trial court's order that failed to suppress the post-arrest statements made by the defendant after the officer attempted to have the defendant submit to a breathalyzer test. *Id.* at 421. The court concluded that the officer had made a citizen's arrest and that once the officer began conducting a DUI investigation following the arrest, he was acting under the color of law in that he was seeking evidence that could only have been available to him in his capacity of a law enforcement officer. *Id.* at 420–21.

The facts here differ significantly from *Mattos*. The DUI in *Mattos* originated and was observed by the municipal officer outside of the city limits. As such, and as noted by our sister court, the officer effected a citizen's arrest and could not thereafter, as part of a continuing DUI investigation, use the color of his office to request that the defendant submit to a breath test under the implied consent law. In contrast, Officer Campbell did not make a citizen's arrest as the defendant's DUI originated in and was observed by Campbell within the city limits of Winter Park.

Lastly, in *Sills*, the defendant was arrested for committing a crime within the municipal law enforcement officer's territorial jurisdiction. 852 So. 2d at 391. The officer obtained additional evidence against the defendant

9

through a search of his residence that was located outside of the officer's jurisdiction. *Id.* The defendant moved to suppress this evidence, which the State opposed, arguing the same exception to the color of law doctrine as raised by the defendant here. *Id.* The trial court granted the defendant's motion, and the State appealed. *Id.* at 391–92.

The Fourth District rejected the State's argument and affirmed the trial court's order. *Id.* at 394. The court explained that the evidence obtained by the municipal officer at the defendant's residence outside of his geographic jurisdiction pertained to a separate crime that had not only originated outside of the officer's jurisdiction, but was also wholly unrelated to the crime for which the defendant had been first arrested. *Id.* at 393.

The facts in *Sills* materially differ from the present case. Simply stated, the breath test evidence obtained by Officer Campbell outside of his municipality was directly related to the arrest and ongoing investigation for the DUI committed by the defendant within Campbell's jurisdiction.

We hold that the ongoing investigation exception to the color of office doctrine applies here. Officer Campbell arrested the defendant because he had probable cause to believe that the defendant committed the crime of DUI within Campbell's municipality. We find that the color of office doctrine did not preclude him, as part of his ongoing investigation that originated inside the municipal city limits, from then taking the defendant to the Breath Test

10

Center in Orlando and requesting that he submit to a breath test. Accordingly, we reverse the order suppressing the breath test evidence obtained in Orlando. In doing so, we note our agreement with the decision of the Supreme Court of Rhode Island where, in a case also involving a municipal law enforcement officer obtaining a breath test from a DUI suspect outside of the officer's municipality, the court wrote:

> In this case, [the defendant] had been lawfully arrested, based upon probable cause, and was in the legitimate custody of the [arresting police department]. It was only while acting in accordance with their duty to gather and preserve evidence for use at trial, that the officers drove [the defendant] to [a neighboring city] for a Breathalyzer test. We are thus satisfied that the [arresting police officer] acted appropriately and did not relinquish lawful custody of their prisoner at the town line. This conclusion rests upon the distinction between an arrest and seizure of a suspect outside a municipality's borders—an authority that is limited in scope and recognized only in narrowly-defined circumstances—and the extraterritorial transport of a prisoner who is in lawful custody, for the performance of legitimate law enforcement duties, which we sanction today.

*State ex rel. Town of Portsmouth v. Hagan*, 819 A.2d 1256, 1261 (R.I. 2003).[9]

---

[9] *See also Pickering v. State*, 412 S.W. 3d 143, 150 (Ark. 2012) (citing with approval the reasoning employed by the Rhode Island Supreme Court in *Hagan* and holding that the deputies' actions in transporting the defendant to a neighboring county for the purpose of administering a breathalyzer test were both reasonable and lawful).

Lastly, because we believe that the factual scenario that occurred here is a recurring one faced by municipal law enforcement officers during DUI investigations, we certify to the Florida Supreme Court the following question of great public importance:

> DOES A MUNICIPAL LAW ENFORCEMENT OFFICER WHO HAS LAWFULLY ARRESTED A SUSPECT FOR COMMITTING THE OFFENSE OF DUI WITHIN THE OFFICER'S TERRITORIAL JURISDICTION HAVE THE CONTINUED AUTHORITY OF HIS OR HER OFFICE TO REQUEST THAT THE SUSPECT SUBMIT TO BREATH TESTING UNDER FLORIDA'S IMPLIED CONSENT LAW WHEN THE REQUEST AND THE TESTING TAKE PLACE OUTSIDE OF THE CITY LIMITS OF THE OFFICER'S MUNICIPALITY?

REVERSED; QUESTION CERTIFIED.

EDWARDS and HARRIS, JJ., concur.