987 So.2d 787 (2008)
STATE of Florida, Appellant,
v.
Joseph MODESTE, Appellee.
No. 5D07-2010.
District Court of Appeal of Florida, Fifth District.
August 8, 2008.
*788 Bill McCollum, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellant.
Frank J. Bankowitz of Frank J. Bankowitz, P.A., Orlando, for Appellee.

EN BANC
PER CURIAM.
The State appeals from an order suppressing certain inculpatory statements made by Modeste. The trial court found that the Miranda[1] warnings given to Modeste were insufficient to apprise him of his right to have counsel present during interrogation. We find that Modeste was adequately advised of his rights and, accordingly, reverse.
Arthur and Betty Williams were shot to death in Orlando, Florida, on August 28, 2003. A witness identified Modeste as the individual who had shot them. Modeste was arrested in Indiana over a year later. During his videotaped interview with two officers from the Orange County Sheriff's Department, Modeste made certain inculpatory statements. Modeste was later indicted for two counts of first degree murder.
Modeste subsequently filed his first motion to suppress. In his motion, Modeste contended, inter alia, that he had expressly invoked his right to counsel prior to the commencement of videotaping and that he had been improperly coerced into giving a statement. At the ensuing evidentiary hearing, the trial court heard testimony from Modeste and the two police officers who questioned him. A portion of the videotape pertaining to the Miranda warnings given to Modeste was admitted into evidence, as well as a Miranda waiver form executed by Modeste. The videotape reflects that the officers advised Modeste that he had a right to remain silent and that anything he said could be used against him in a court of law. With regard to the right to counsel, the police told Modeste:
Q. You're entitled to talk to an attorney and if you want one you can ask for an attorney. If you can't afford one, you know, they can appoint you one. You know. Of course you ... you can talk to an attorney first before talking to us.
The officers subsequently re-emphasized that Modeste did not have to talk to them:

*789 Q. If at anytime you feel uncomfortable or you think we're trying to persuade you to say something you stop talking bro. This is all on you. We're gonna give you ... we're giving you an opportunity to, you know, to say what you gotta say. You know. You know. You ... you understand what those things are ... the things ...
A. Yes.
Q. ... I told you? Okay. You got ... do you understand that we're not trying to force you to talk either.
A. Right.
Q. That is totally up to you. You know.
A. Alright.
Q. So I'm gonna ask you straight up do you want ... do you wanna talk to us?
A. I ain't got no problem.
In denying Modeste's initial motion to suppress, the trial judge expressly rejected Modeste's claim that he had invoked his right to counsel prior to the onset of questioning. The trial judge also found that Modeste was adequately advised of his Miranda rights, that he affirmatively acknowledged that he understood those rights, and that he voluntarily waived those rights.
Modeste then filed a second motion to suppress, claiming that the officers' failure to expressly advise Modeste of his right to counsel during interrogation necessitated suppression of his statements. In support of his motion, Modeste cited to this court's decision in Maxwell v. State, 917 So.2d 404 (Fla. 5th DCA 2006).
A different trial judge heard the second motion to suppress. No new evidence was presented at the hearing, although it is clear from his order, that the successor trial judge had reviewed the videotape and the written waiver form. The trial court found that Modeste had not been adequately apprised of his right to counsel during interrogation. The successor trial judge further concluded that the officers' warnings were affirmatively misleading based on the trial judge's conclusion that while Modeste had been expressly advised of his right to counsel prior to interrogation he had not been advised of his right to counsel during interrogation. The trial judge also concluded that the allegedly defective verbal Miranda warnings were not cured by the written waiver form because the written waiver form was not read aloud to Modeste and it was not clear that he was able to read the waiver form in light of his statement that he was dyslectic. The State seeks appellate review of that order.
Although the written waiver form was more than adequate,[2] we agree, that in this case, the State cannot rely on the form. The videotape reflects that Modeste was told that the document simply stated "that we read you your rights." Modeste was given virtually no opportunity to read the waiver form prior to signing same.
In finding that the Miranda warnings given to Modeste were inadequate, the trial court understandably relied on our decision in Maxwell. In Maxwell, we rejected the State's argument that "implicit in the warning to [the suspect] that he had a right to an attorney is the warning that he had the right to have the attorney present during questioning and that one would be appointed in the event he could not afford to hire one." Id. at 407-408.
We continue to adhere to the view that a Miranda warning which fails *790 to advise a defendant of his right to appointed counsel if he cannot afford to hire his own attorney is inadequate. See Thompson v. State, 595 So.2d 16 (Fla. 1992). However, we recede from our suggestion in Maxwell that a Miranda warning is inadequate when the suspect is not expressly advised that the right to counsel includes the right to have counsel present during interrogation.[3] In doing so, we recognize that the Fourth District Court of Appeal has taken a contrary position. See West v. State, 876 So.2d 614 (Fla. 4th DCA 2004); Roberts v. State, 874 So.2d 1225 (Fla. 4th DCA 2004). In those cases, the Fourth District Court of Appeal concluded that a Miranda warning is inadequate when the suspect is informed generally of the right to an attorney but not when the attorney can assist. In reaching this conclusion, the Court relied on the following language from Miranda:
[W]e hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.... As with the [other] warnings ... this warning is an absolute prerequisite to interrogation.
Roberts, 874 So.2d at 1227 (citing Miranda, 384 U.S. at 471-72, 86 S.Ct. 1602). While this language might indicate that a suspect must be expressly advised that he has the right to have counsel present during interrogation, we agree with Judge Canady's opinion in M.A.B. v. State, 957 So.2d 1219 (Fla. 2d DCA), rev. granted, 962 So.2d 337 (Fla.2007), that a close reading of Miranda strongly suggests a contrary conclusion.
In M.A.B., the defendant was advised:
You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering ... any of our questions. If you cannot afford to hire a lawyer, one will [be] appointed for you without cost and before any questioning. You have the right to use any of these rights at anytime you want during this interview.
957 So.2d at 1220. M.A.B. filed a motion to suppress his post-arrest statements alleging, that the Miranda warnings he received were inadequate because they failed to inform him of his right to have an attorney present during questioning. The trial court denied M.A.B.'s motion to suppress. The Second District Court of Appeal considered the case en banc. Seven judges voted to affirm and seven judges voted to reverse. In writing for the judges who voted to affirm, Judge Canady recognized that in Miranda, the Supreme Court tacitly approved warnings that did not expressly reference a suspect's right to counsel during interrogation. Specifically, the Supreme Court found that the FBI's standard warnings were consistent with the requirements imposed by its decision.
[T]he present pattern of warnings and respect for the rights of the individual followed as a practice by the FBI is consistent with the procedure which we delineate today.
Miranda, 384 U.S. at 483-84, 86 S.Ct. 1602. The FBI policy did not require a suspect to be specifically advised that he had the right to have counsel present during interrogation. The FBI's policy, at the time, required its agents to advise a criminal suspect at the onset of an interview *791 "that [the suspect] is not required to make a statement, but any statement may be used against him in court, that the individual may obtain the services of an attorney of his own choice and, ... that he has a right to free counsel if he is unable to pay." Id. at 483, 86 S.Ct. 1602.
Notwithstanding Miranda's approval of warnings which did not specifically reference the right to have counsel present during interrogation, some federal courts appear to require a suspect to be expressly apprised of the right to have counsel present during interrogation. See, e.g., United States v. Noti, 731 F.2d 610 (9th Cir.1984); Windsor v. United States, 389 F.2d 530 (5th Cir.1968). However, other federal courts have upheld the validity of Miranda warnings notwithstanding the lack of an express statement concerning the right to have counsel present during questioning. See, e.g., United States v. Frankson, 83 F.3d 79 (4th Cir.1996); United States v. Adams, 484 F.2d 357 (7th Cir.1973); United States. v. Lamia, 429 F.2d 373 (2d Cir.1970).
As noted by Judge Canady, Lamia is significant because it was subsequently cited by the United States Supreme Court for the proposition that Miranda does not require a "precise formulation" of the warnings to be given a criminal suspect. California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). In Prysock, the Supreme Court emphasized that Miranda did not require a "talismanic incantation" of a suspect's rights. Rather, the inquiry was whether the suspect had been advised of the "now-familiar Miranda warnings ... or their equivalent." 453 U.S. at 359-60, 101 S.Ct. 2806.
We also find it significant that the Supreme Court has stressed that Miranda warnings are not themselves constitutionally-protected rights, but are measures to ensure that the right against compulsory self-incrimination is protected. See Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989); Michigan v. Tucker, 417 U.S. 433, 434, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). Accordingly, in determining whether a suspect has been adequately advised of his rights, a court should not lose sight that the primary purposes for the giving of Miranda warnings is to ensure that a suspect is aware of his right to remain silent and is not coerced into making incriminating statements. A reviewing court should not examine Miranda warnings "as if construing a will or defining the terms of an easement." Duckworth, 492 U.S. at 203, 109 S.Ct. 2875. Instead, a court should use a common sense approach in an effort to determine if the warnings given would adequately advise a layperson of his or her right to an attorney under the Fifth Amendment.
We hold that when an individual is adequately advised of his right to remain silent, anything he says can be used against him, he has the right to an attorney, and if he cannot afford an attorney one will be appointed for him, Miranda does not require that the suspect also be expressly informed he has the right to have counsel present during interrogation.
Modeste next argues that the officer's statement "[o]f course you ... you can talk to an attorney first before talking to us" rendered his Miranda warnings invalid. Modeste contends that the officer's statement is affirmatively misleading because it suggested that Modeste had a right to counsel prior to interrogation but not during interrogation. We disagree. The officer's statement can only be reasonably construed to reflect that the officer was emphasizing that Modeste's right to counsel arose prior to any questioning. We fail to see how the officer's statement could reasonably lead Modeste to believe *792 that he had a right to counsel prior to questioning but that such right would summarily disappear once questioning began. See People v. Wash, 6 Cal.4th 215, 24 Cal.Rptr.2d 421, 861 P.2d 1107, 1118-119 (1993).
We recognize that our conclusion on this issue may be in conflict with the Second District Court of Appeal's decision in Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007), jurisdiction accepted, 973 So.2d 1123 (Fla.2008). However, our decision is consistent with Judge Canady's conclusion in M.A.B. that the reference to access to counsel before questioning cannot reasonably be understood to imply that access to counsel would be terminated once questioning began. M.A.B., 957 So.2d at 1226.
The officers' statements to Modeste were not an eloquent formulation of Miranda warnings. But the test is whether the warnings reasonably conveyed to the suspect his rights as required by Miranda. Duckworth, 492 U.S. at 203, 109 S.Ct. 2875. Here, Modeste was advised that he did not have to talk to the officers; but that if he did, anything he said could be held against him in a court of law. Modeste was further informed that he had the right to an attorney and, indeed, could consult with an attorney prior to talking to the officers. The officers made no statements that could reasonably be construed to suggest that Modeste's right to counsel did not include the right to have counsel present during interrogation. Finally, Modeste was informed that if he could not afford an attorney, one could be appointed for him. We conclude that the officers' statements adequately advised Modeste of his rights, as required by Miranda. In doing so, we certify conflict with West and Roberts.
REVERSED and REMANDED.
PALMER, C.J., GRIFFIN, PLEUS, ORFINGER, TORPY, EVANDER and COHEN, JJ., concur.
MONACO, J., concurring specially with opinion, with which ORFINGER, J., concurs.
EVANDER, J., concurring specially with opinion.
SAWAYA, J., dissenting with opinion.
LAWSON, J., recused.
MONACO, J., concurring.
While I agree with the analysis contained in the majority opinion, I think it is clear, as indicated in the dissent, that the present case presents an issue that has been differently decided by other district courts of appeal in this state. Accordingly, while I am in favor of reversing and remanding this case, I also believe that we should certify the questions suggested by the dissent as matters of great public importance.
ORFINGER, J., concurs.
EVANDER, J., concurring specially.
I write separately to respectfully respond to the arguments raised in the dissenting opinion. In doing so, I recognize that forty-two years after the issuance of the Miranda decision, there remains a split of authority in both the state and federal courts as to whether Miranda[1] requires a suspect to be expressly advised that his right to counsel includes the right to have an attorney present during interrogation.
The dissent suggests that the Miranda court did not approve the substance of the FBI warning, but merely commended the FBI's overall procedure for conducting *793 custodial interrogations. This argument is belied by the United States Supreme Court's statement:
A letter received from the Solicitor General in response to a question from the Bench makes it clear that the present pattern of warnings and respect for the rights of the individual followed as a practice by the FBI is consistent with the procedure which we delineate today. (emphasis added)
Miranda v. Arizona, 384 U.S. at 483, 484, 86 S.Ct. 1602 (1966).
While the dissent argues that it would make "absolutely no sense" for the Supreme Court to approve the FBI warning after going to great lengths to articulate that a suspect is to be apprised of his right to have counsel present during interrogation, I would suggest that it is unlikely that the Supreme Court would discuss the FBI warnings in great detail,[2] find that the FBI's present pattern of warnings was "consistent with the procedure which we delineate today" and encourage state and local law enforcement agencies to emulate the FBI's practices if the Supreme Court deemed the FBI warnings to be constitutionally infirm.
The Miranda opinion was actually a consolidation of four different appeals. One of the four cases decided by the Miranda court was Westover v. United States.[3] The dissent's conclusion that the Supreme Court did not implicitly approve the FBI warnings is also undermined by the Miranda court's discussion of Mr. Westover's case. Westover was arrested by local police in Kansas City as a suspect in two Kansas City robberies. Westover was interrogated extensively by the Kansas City police without first being apprised of his rights. The FBI wished to interrogate Westover regarding the robbery of a savings and loan association and a bank in Sacramento, California. The FBI commenced its interrogation of Westover almost immediately after the Kansas City police had completed their interrogation. At the outset of this second interrogation, the FBI agents "advised Westover that he did not have to make a statement, that any statement he made could be used against him, and that he had the right to see an attorney." Miranda, 384 U.S. at 495, 86 S.Ct. 1602. Two hours later, Westover confessed to the California robberies. In reversing Westover's convictions, the Supreme Court did not suggest, in any way, that the FBI's agents' warnings were flawed. Rather, the Supreme Court found that the FBI agents had benefited from the Kansas City's police officers' unlawful interrogation of Westover and, thus, Westover could not be found to have intelligently waived his constitutional rights.
Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's point of view the warnings came at the end of the interrogation process. In these circumstances, an intelligent waiver of constitutional rights cannot be assumed. We do not suggest that law enforcement authorities are precluded from questioning any individual who has been held for a period of time by other authorities and interrogated by them without appropriate warnings. A different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given *794 an opportunity to exercise them. But here the FBI interrogation was conducted immediately following the state interrogation in the same police station  in the same compelling surroundings. Thus, in obtaining a confession from Westover the federal authorities were the beneficiaries of the pressure applied by the local in-custody interrogation. In these circumstances, the giving of warnings alone was not sufficient to protect the privilege.
Miranda, 384 U.S. at 496-97, 86 S.Ct. 1602. The warnings given by the FBI agents in Westover were apparently the same warnings described in the Solicitor General's letter to the Supreme Court. Id. at 484, 86 S.Ct. 1602.[4]
The FBI's subsequent modification of its standard warnings does not alter the fact that the Supreme Court implicitly approved the standard warnings used by the FBI in 1966. Given that at least one federal circuit court found that Miranda required a suspect to be expressly advised that his right to counsel included the right to have counsel present during interrogation as early as 1968,[5] it is not unreasonable that the FBI would adopt a "better to be safe than sorry" approach. Furthermore, a law enforcement agency may certainly choose to utilize more comprehensive warnings than are constitutionally required.
The dissent's reliance on Chavez v. State, 832 So.2d 730 (Fla.2002), Johnson v. State, 750 So.2d 22 (Fla.1999), Ramirez v. State, 739 So.2d 568 (Fla.1999), Sapp v. State, 690 So.2d 581 (Fla.1997) and Allred v. State, 622 So.2d 984 (Fla.1993) is misplaced. The Florida Supreme Court did not address the issues that are the subject of this appeal in any of those cases. The Florida Supreme Court simply reaffirmed that a suspect must be informed of his right to have counsel present during interrogation. The question here is whether a suspect is so informed when, prior to the commencement of any interrogation, the suspect is advised that not only does he have the right to remain silent but he also has the right to an attorney. The Miranda court's discussion of the FBI warnings and the Westover case suggests an affirmative answer to this question.
Finally, I will address the dissent's argument that the warnings given to Modeste were misleading. After an evidentiary hearing, the initial trial judge found that Modeste had affirmatively acknowledged that he understood his rights and that he had voluntarily waived those rights. The initial trial judge's findings are amply supported by the videotape. A review of the videotape reflects that despite having a clear understanding of his right to remain silent and his right to counsel, Modeste voluntarily chose to answer the detectives' questions. The videotape is devoid of any indication that Modeste somehow believed that his right to counsel would evaporate once his interrogation commenced.
SAWAYA, J., dissenting.
I believe that advising a defendant that he has the right to talk to a lawyer before questioning does not comply with the requirement of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 *795 (1966), that a defendant be clearly advised of his right to have counsel present during questioning. Therefore, I must dissent. To explain my reasons for doing so, I will discuss the factual background of the instant case; the Miranda decision and subsequent decisions rendered by the United States Supreme Court and the Florida courts that explain the requirements of Miranda; and why the warnings given to the appellant, Joseph Modeste, were not the fully effective equivalent of the warnings required by Miranda. Finally, I will discuss why the warnings given to Modeste were misleading and confusing.

Factual Background
Dressed in jail garb, Modeste was seated at a small table in an interrogation room located in a police station. He had just been arrested for murder. Across from Modeste sat two police officers busily setting up a recorder to audiotape the interrogation that was about to take place. The proceedings were also recorded via a video recorder. As they were about to start, one of the officers specifically told Modeste that "we know a whole lot about you" and indicated that the officers already knew much about what happened. Then one of the officers gave the following warning to Modeste regarding his right to counsel:
Q. You know. You know, anything you say can be used held [sic] against you in a court of law. You know. You're entitled to talk to an attorney and if you want one you can ask for an attorney. If you can't afford one, you know, they can appoint you one. You know. Of course you ... you can talk to an attorney first before talking to us. You know I ... I can ... I can tell you that we will get ... we'll start talking after you... you understand these things, you know, where we come from and ... and Torrence is ... he's straight up when he talks to you that way. Understand what I'm saying?
What the police told Modeste, and what any reasonable person would understand this collection of muddled and jumbled words to mean, was that he had the right to talk to an attorney before he was questioned by the police.
The primary issue in this case is the same issue that was addressed in Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007), and M.A.B v. State, 957 So.2d 1219 (Fla. 2d DCA 2007). See also Seward v. State, 973 So.2d 578 (Fla. 2d DCA 2008). It is also the same issue addressed by numerous decisions rendered by the Fourth District Court. See West v. State, 876 So.2d 614, 616 (Fla. 4th DCA 2004); Franklin v. State, 876 So.2d 607, 608 (Fla. 4th DCA 2004); Roberts v. State, 874 So.2d 1225, 1229 (Fla. 4th DCA 2004). That issue is whether a defendant is sufficiently advised of his rights pursuant to Miranda when he is told that he has the right to talk to an attorney before questioning but is not further advised that he has the right to have the attorney present during questioning. In Powell, the court held such a warning is inadequate and requires suppression of the defendant's statements. The court in Powell explained:
The warning that Mr. Powell received was constitutionally flawed because the right to talk to or consult with an attorney before questioning is not identical to the right to the presence of an attorney during questioning. Miranda requires that suspects be "clearly informed" of their right to have a lawyer with them during questioning. [Miranda, 384 U.S.] at 471, 86 S.Ct. 1602. "[T]his warning is an absolute prerequisite to interrogation." Id. at 472, 86 S.Ct. 1602.
Powell, 969 So.2d at 1067.
In the decisions rendered by the Fourth District Court, the warnings at issue advised *796 the defendant, "You have the right to talk with a lawyer and have a lawyer present before any questioning," but they did not advise the defendant that he had the right to have counsel present during the interrogation. Roberts v. State, 874 So.2d 1225, 1226 (Fla. 4th DCA 2004). This warning is strikingly similar to the warning given to Modeste. Concluding that the warnings were inadequate because they failed to inform the defendant that he had the right to have counsel present during interrogation, the Fourth District Court suppressed the defendant's statement. West; Franklin; Roberts.
I fully agree with the holding in Powell and the decisions rendered by the Fourth District Court. I believe that a defendant has more than just a right to talk to an attorney before being interrogated by the police. Talking can be by telephone, e-mail, two-way radio, facsimile, or other electronic means. I believe that a defendant has the right to the presence of an attorney and to have the attorney present during interrogation. I also agree with the reasoning of the dissenting opinions in M.A.B. that warning a defendant he has the right to talk to a lawyer before questioning without warning him of his right to have the attorney present during questioning misleads the defendant into believing that he has the former right, but not the latter.
The majority aligns itself with the concurring opinion in M.A.B., which is founded on what I consider to be the erroneous conclusion that the Court in Miranda specifically approved the FBI warnings quoted in the Miranda opinion as sufficient warnings to be given a defendant. Those warnings merely advised "that the person has a right to say nothing and a right to counsel, and that any statement he does make may be used against him in court." Miranda, 384 U.S. at 484, 86 S.Ct. 1602. The FBI also advised that the defendant has the "right to free counsel if he is unable to pay, and the fact that such counsel will be assigned by the Judge." Id. The majority and the concurring opinion in M.A.B. reason that since those FBI warnings did not advise the defendant of the right to have counsel present before and during questioning, such an explicit warning is not necessary. I disagree with that conclusion. Those FBI warnings were contained in a letter from the Solicitor General, which was quoted in the Miranda opinion. That letter outlined the procedure the FBI utilized in conducting custodial interrogations. The procedure outlined in the letter included when the warnings are given; what the FBI's practice is when the individual requests counsel and counsel appears; and what the FBI's practice is when the individual requests counsel, but cannot afford to hire one. After noting all of these practices, the Court in Miranda stated: "The practice of the FBI can readily be emulated by state and local enforcement agencies." 384 U.S. at 486, 86 S.Ct. 1602. Hence, I do not believe that the Court approved the substance of the FBI warning; rather, it simply commended the FBI's overall procedure for conducting custodial interrogations. A discussion of the Miranda decision and subsequent decisions rendered by the Court make it clear that more than the FBI warnings noted in the Miranda decision are required to satisfy the Fifth Amendment.

The Miranda Decision and Subsequent Decisions Rendered by the United States Supreme Court Explain that Miranda Requires a Defendant be Advised that He has the Right to Have Counsel Present During Questioning
The Court in Miranda made its ruling clear that a defendant must be informed of *797 his right to have counsel present during custodial interrogation when it held:
Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.
384 U.S. at 444, 86 S.Ct. 1602 (emphasis added). The Court continued with its ruling when it stated:
Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.
Id. at 471-72, 86 S.Ct. 1602 (emphasis added). The Court summarized its ruling by explaining that when an individual is taken into custody, "the following measures are required" in order to protect his or her privilege against self-incrimination:
He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

Id. at 478-79, 86 S.Ct. 1602 (emphasis added).
After the Court in Miranda went to such lengths to articulate its holding  that individuals in custody must be clearly advised of their right to have counsel present during interrogation  it makes absolutely no sense to say that the Court approved FBI warnings that did not include that specific warning. If the Court intended to adopt the FBI warnings, it would have simply quoted them and held that these are the warnings that must be given. Instead, the Court rendered a 49-page majority opinion that spelled out in detail the warnings that must be given, and those warnings are far more extensive than those used by the FBI.
I think it interesting to note here that not even the FBI considered Miranda a stamp of approval on the warnings quoted in the Solicitor General's letter because after Miranda was decided, the FBI revised its warnings to require that defendants be specifically told: "You have the right ... to have a lawyer with you during questioning." Duckworth v. Eagan, 492 U.S. 195, 203 n. 4, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). In his concurring opinion, Judge Evander argues that the FBI revised its warnings after Miranda as a "better to be safe than sorry" approach. I totally reject this argument. If, as *798 Judge Evander argues, the Court did actually adopt the FBI warnings as stated in the Solicitor General's letter, it is inconceivable that the FBI would subsequently modify those warnings to include warnings the Court did not approve  if the FBI wanted to be safe, it would certainly adhere to the warnings approved by the highest court in the land; if the FBI wanted to be sorry, it would risk modifying those warnings by including warnings that were not approved. The illogic that flows from the "better to be safe than sorry" argument is readily apparent, and it warrants no further discussion.
Subsequent pronouncements by the Court in other cases clearly reveal that a defendant must be advised of his right to have counsel present during interrogation. In Fare v. Michael C., 442 U.S. 707, 717-18, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the Court fully explained the holding of the Miranda decision:
The rule the Court established in Miranda is clear. In order to be able to use statements obtained during custodial interrogation of the accused, the State must warn the accused prior to such questioning of his right to remain silent and of his right to have counsel, retained or appointed, present during interrogation. [Miranda,] 384 U.S. at 473, 86 S.Ct. at 1627. "Once [such] warnings have been given, the subsequent procedure is clear." Ibid.

Id. at 717-18, 99 S.Ct. 2560. The Court in Fare discussed the critical role the attorney has in protecting the privilege against self-incrimination and why his or her presence during interrogation is so important. The Court stated:
The rule in Miranda, however, was based on this Court's perception that the lawyer occupies a critical position in our legal system because of his unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation. Because of this special ability of the lawyer to help the client preserve his Fifth Amendment rights once the client becomes enmeshed in the adversary process, the Court found that "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system" established by the Court. [Miranda, 384 U.S.] at 469, 86 S.Ct. at 1625. Moreover, the lawyer's presence helps guard against overreaching by the police and ensures that any statements actually obtained are accurately transcribed for presentation into evidence. Id. at 470, 86 S.Ct. at 1625.
Id. at 719, 99 S.Ct. 2560 (emphasis added).
Similarly, the Court in Colorado v. Spring, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), explained how the requirements of the Miranda warnings protect the privilege against self-incrimination. The Court stated:
The Miranda warnings protect this privilege by ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. The Miranda warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of this constitutional privilege, including the critical advice that whatever he chooses to say may be used as evidence against him.
Id. at 574, 107 S.Ct. 851 (emphasis added).
In Duckworth, the Court explained the warnings necessary to comply with Miranda as follows:
We think the initial warnings given to respondent touched all of the bases required by Miranda. The police told *799 respondent that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to speak to an attorney before and during questioning, that he had "this right to the advice and presence of a lawyer even if [he could] not afford to hire one," and that he had the "right to stop answering at any time until [he] talked to a lawyer."
Duckworth, 492 U.S. at 203, 109 S.Ct. 2875 (emphasis added) (quoting Eagan v. Duckworth, 843 F.2d 1554, 1555-56 (7th Cir. 1988)).[1]
Judge Evander argues in his concurring opinion that the conclusion I reach  that the Supreme Court did not approve the FBI warnings  is undermined by the Miranda court's discussion of Westover v. United States, 342 F.2d 684 (9th Cir.1965). He discusses the facts of the Westover case, which is one of the consolidated cases decided in the Miranda decision, and suggests that the warnings given Westover were "apparently the same warnings described in the Solicitor General's letter...." However, the warnings given to Westover are not quoted in the Miranda decision so we do not know what warnings were actually given to him, and to argue that they are the same warnings quoted in the Solicitor General's letter is nothing more than speculation. Moreover, although Judge Evander quotes extensively from Miranda's discussion of Westover, I find nothing in that discussion that would lead to the conclusion that the Court did adopt the FBI warnings as Judge Evander suggests. That is because reversal of Westover's conviction did not turn on the adequacy of the warnings the FBI eventually did give to Westover after several hours of interrogation by the local police. Accordingly, I think it is an incredible stretch to conclude from the reversal of the conviction in the Westover case that the FBI warnings were adopted by the Court in Miranda, especially in light of the clear and explicit language in Miranda that requires a defendant be advised of his or her right to the presence of counsel during questioning.
The Florida courts have similarly held that Miranda requires that a defendant be warned of his right to have counsel present during interrogation.

Decisions Rendered by the Florida Courts Explaining that Miranda Requires that a Defendant be Expressly Informed of His Right to Have Counsel Present During Interrogation
The Florida Supreme Court has adopted the same view of the Miranda decision expressed in Duckworth, Spring, and Fare, and has never expressed the view *800 adopted by the majority in this case that appropriate Miranda warnings do not have to specifically include a clear warning of the right to have counsel present during interrogation. In Ramirez v. State, 739 So.2d 568 (Fla.1999), the court explained its views of the Miranda decision and the warnings required to comply with that decision:
In Miranda, the United States Supreme Court enunciated a bright-line rule to guard against compulsion and the coercive nature and atmosphere of custodial interrogation, and "assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." 384 U.S. at 469, 86 S.Ct. 1602. Miranda requires that police inform suspects that they have the right to remain silent, and that anything they do say can be used against them in court. 384 U.S. at 468-69, 86 S.Ct. 1602. Suspects must also be informed that they have a right to an attorney during questioning, and that if they cannot afford an attorney, one will be appointed for them without cost. See id. at 467-76, 86 S.Ct. 1602; Traylor [v. State,] 596 So.2d [957, 966 (Fla.1992)].
... Therefore, "unless and until [the Miranda] warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against [the defendant]." Miranda, 384 U.S. at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. The protections enunciated in Miranda have been part of this State's jurisprudence for over a century pursuant to the Florida Constitution. See Traylor, 596 So.2d at 964-66.
Id. at 573 (emphasis added).
The Florida Supreme Court in other cases has made equally clear statements of the warnings that must be given a defendant in order to comply with the Miranda decision. In Sapp v. State, 690 So.2d 581 (Fla.1997), for example, the court explained that "[i]n Miranda, the United States Supreme Court ruled that statements made by an individual while under custodial interrogation may not be introduced as evidence against the individual unless he or she first has been informed of certain rights, including the right to have counsel present during custodial interrogation." Id. at 583-84 (emphasis added). In Allred v. State, 622 So.2d 984 (Fla. 1993), the court emphasized:
[T]he Self-Incrimination Clause of Article I, Section 9, Florida Constitution, requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer's help [the right to consult with a lawyer before being interrogated and to have the lawyer present during interrogation], and that if they cannot pay for a lawyer one will be appointed to help them.
Id. at 987 (emphasis added) (quoting Traylor v. State, 596 So.2d 957, 966 & n. 13 (Fla.1992)).
Equally important, the Florida Supreme Court has approved the warnings of the Metro Dade Police Department, which specifically include the warning that the defendant has the right to have counsel present before and during questioning. In Chavez v. State, 832 So.2d 730 (Fla.2002), the court directly addressed the issue whether a defendant must be informed of his right to have counsel present before questioning and held:
Chavez also asserts that his confession must be suppressed as involuntary because he was not properly advised of his right to consult with counsel before questioning. See Traylor v. State, 596 So.2d 957, 957 n. 13 (Fla.1992) (observing *801 that "the suspect has the right to consult with a lawyer before being interrogated and to have the lawyer present during the interrogation"). Here, Chavez, who indicated that he had a twelfth-grade education, read the Metro Dade Miranda form in Spanish, and initialed it. This form has specifically been upheld as sufficient. See Cooper v. State, 739 So.2d 82, 84 n. 8 (Fla.1999) (approving this warning on the Metro Dade rights form: "If you want a lawyer to be present during questioning, at this time or any time thereafter, you are entitled to have a lawyer present."). Thus, Chavez's claim that he was insufficiently informed of his Miranda rights fails.
Id. at 750 (emphasis added).
In Johnson v. State, 750 So.2d 22 (Fla. 1999), the court once again addressed the issue, explaining:
In issue one, Johnson claims that his confessions to both the instant case and another robbery and murder should have been suppressed because the Metropolitan Dade County Miranda warning form did not adequately apprise Johnson of his right to consult with counsel prior to questioning as well as during questioning. As we stated in Cooper [v. State, 739 So.2d 82 (Fla. 1999) ], the language of the warning form "tracks the language of Miranda." Id. Thus, Johnson's confessions were properly admitted by the trial court.
Id. at 25 (footnotes omitted). In Gillis v. State, 930 So.2d 802 (Fla. 3d DCA 2006), the court again confronted the issue raised in Chavez, Johnson, and Cooper v. State, 739 So.2d 82 (Fla.1999), and again concluded that "the form used by the Miami-Dade Police Department, which advises the accused that he/she has the right to an attorney during questioning and any time thereafter, and, which tracks the language of Miranda, is sufficient." Gillis, 930 So.2d at 805-06. The court quoted the approved warnings given by the Metro Dade Police Department as follows:
(a) You have the right to remain silent and you do not have to talk to me if you do not wish to do so. You do not have to answer any of my questions. Do you understand that right?
(b) Should you talk to me, anything which you might say may be introduced into evidence in court against you. Do you understand?
(c) If you want a lawyer to be present during questioning, at this time or anytime hereafter, you are entitled to have a lawyer present. Do you understand that right?
(d) If you cannot afford to pay for a lawyer, one will be provided for you at no cost if you want one. Do you understand that right? Knowing these rights are you willing to answer my questions without having a lawyer present?
Id.
In his concurring opinion, Judge Evander proclaims that the cases just discussed are not relevant because they do not resolve the precise issue presented in the instant case. I think they are analogous and very relevant, but will let those adventurous enough to read them make that determination for themselves. The critical question that neither Judge Evander nor the majority answers is why the Florida Supreme Court would make these clear and specific pronouncements in the cases I have discussed if it understood that the FBI warnings alluded to in the Miranda opinion were the warnings approved by the United States Supreme Court. I suggest that there is only one logical answer: the Florida Supreme Court, like the United States Supreme Court, does not believe that the Court in Miranda adopted the FBI warnings  rather, these cases clearly reveal that the Florida Supreme Court *802 believes that the warnings it approved in Chavez, Johnson, and Cooper are the appropriate warnings to be given in fulfillment of the holding in Miranda.
It is clear that a defendant must be advised of his right to have counsel present during interrogation.[2] The majority contends, however, that the warning given to Modeste is the fully effective equivalent of that right. I disagree.

Advising a Defendant that He has the Right to Talk to a Lawyer Before Interrogation is Not a Fully Effective Equivalent to Advising Him of His Right to Have a Lawyer Present During Questioning
The majority reverts to the general rule that there is no talismanic incantation that must be used in order to provide the Miranda warnings. However, this does not mean the specific warning that the defendant has the right to have counsel present during question can be eliminated. The general rule simply means that different wording can be used as long as the words constitute "a fully effective equivalent." Duckworth, 492 U.S. at 202, 109 S.Ct. 2875 (quoting Miranda, 384 U.S. at 476, 86 S.Ct. 1602). The Court in Duckworth specifically stated that it had "never insisted that Miranda warnings be given in the exact form described in that decision." Id. (footnote omitted). The Court quoted the revised, post-Miranda FBI warnings as an example of warnings that are a "fully effective equivalent," stating:
For example, the standard Miranda warnings used by the Federal Bureau of Investigation provide as follows:
"Before we ask you any questions, you must understand your rights.
"You have the right to remain silent.
"Anything you say can be used against you in court.
"You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."
Duckworth, 492 U.S. at 203 n. 4, 109 S.Ct. 2875 (quoting Brief for United States as Amicus Curiae 1-2, n. 1) (emphasis added).
In California v. Prysock, 453 U.S. 355, 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Court specifically addressed the question "whether the warnings given to respondent prior to a recorded conversation with a police officer satisfied the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." The Court recognized that there is no talismanic formula that must be used in giving the Miranda warnings as long as the warnings are the "fully effective equivalent" of those warnings. For example, the Court specifically held that the following *803 warning was sufficient as the "fully effective equivalent" of the specific language used in Miranda: "You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning." The Court explained:
[N]othing in the warnings given respondent suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right "to a lawyer before you are questioned, ... while you are being questioned, and all during the questioning." App. A to Pet. for Cert. 9-10; ii. Like United States v. Noa, 443 F.2d 144 (C.A.9 1971), where the warnings given were substantially similar to those given here and defendant's argument was the same as that adopted by the Court of Appeal, "[t]his is not a case in which the defendant was not informed of his right to the presence of an attorney during questioning ... or in which the offer of an appointed attorney was associated with a future time in court...." Id. at 146.
. . . .
It is clear that the police in this case fully conveyed to respondent his rights as required by Miranda. He was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed at no cost if he could not afford one. These warnings conveyed to respondent his right to have a lawyer appointed if he could not afford one prior to and during interrogation.
453 U.S. at 360-61, 101 S.Ct. 2806.
Therefore, I disagree with the majority that the warnings given to Modeste were sufficient to comply with the requirements of Miranda. I agree, instead, with the numerous decisions rendered by the Second and Fourth District Courts that hold Miranda warnings very similar to those given to Modeste are defective if they fail to advise the defendant of his or her right to have counsel present during interrogation. See Seward v. State, 973 So.2d 578 (Fla. 2d DCA 2008); Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007); State v. S.V., 958 So.2d 609 (Fla. 4th DCA 2007); Martin v. State, 921 So.2d 697 (Fla. 4th DCA 2006); Ripley v. State, 898 So.2d 1078 (Fla. 4th DCA 2005); West v. State, 876 So.2d 614, 616 (Fla. 4th DCA 2004); Franklin v. State, 876 So.2d 607, 608 (Fla. 4th DCA 2004); Roberts v. State, 874 So.2d 1225, 1229 (Fla. 4th DCA 2004); see also Anthony v. State, 927 So.2d 1084, 1085-86 (Fla. 4th DCA 2006) ("Florida courts consistently interpreted Miranda to require that a person in custody be notified of the right to have counsel present during interrogation. See, e.g., Ramirez v. State, 739 So.2d 568 (Fla.1999) (summarizing that Miranda requires a defendant to be informed of his right to an attorney during questioning).").
I conclude that the warnings given to Modeste are not only inadequate, they are confusing and misleading.

The Warnings Given to Modeste are Confusing and Misleading
The court in Anderson v. State, 863 So.2d 169 (Fla.2003), held: "Although Miranda warnings must be given to suspects before custodial interrogation can begin, there is no talismanic fashion in which they must be read or a prescribed formula that they must follow, as long as the warnings are not misleading." Id. at 182 (emphasis added). Here, the warnings given to Modeste are not only incomplete because they do not advise him that he has the right to have the attorney present during the interrogation, but also they are confusing and misleading. Advising Modeste that he has *804 the right to "talk to an attorney first before talking to us" necessarily implies that he does not have the right to have counsel present during questioning. Regarding this issue, I specifically align myself with the views expressed by the multiple dissenting opinions in M.A.B v. State, 957 So.2d 1219 (Fla. 2d DCA 2007), that conclude such warnings are confusing and misleading.
Judge Evander argues that a review of the videotape of Modeste's confession reflects that he had a clear understanding of his right to counsel. I disagree. The videotape shows that the only right to counsel Modeste was given was his right to talk to a lawyer before questioning. It is difficult to see how Modeste could have a clear understanding of the right to counsel as explained by the Court in Miranda when he was not advised of his right to the presence of counsel during interrogation as specifically required by the holding in Miranda.
The order under review belies the notion expressed by Judge Evander that the Miranda warnings administered to Modeste were not misleading. That order reveals that Modeste was administered psychotropic drugs and that on March 27, 2006, he was found by the trial court to be incompetent to proceed to trial. In fact, it was not until November 30, 2006, that Modeste was finally found competent to proceed. Moreover, the trial court specifically found in the order that the warnings given to Modeste were misleading. I find the following quote from that order quite telling:
In the instant case, Defendant was specifically informed of his right to remain silent, his right to an attorney before talking, and that he could stop talking at any time. There is no indication from the transcript of his interview that he was informed of his right to an attorney during the interview. The oral Miranda warnings given by the detective did not reasonably convey to Defendant his right to the presence of any attorney during the interview. See Duckworth, 492 U.S. at 203, 109 S.Ct. 2875. Although the specific phrase of "right to counsel during interrogation" is not required to satisfy an adequate Miranda warning, there was no phrase during the interview that could be interpreted as an equivalent. Furthermore, stating specifically that Defendant had a right to counsel before (emphasis added) talking, while omitting that he had a right to counsel during (emphasis added) the interview is affirmatively misleading. This misleading suggestion was not cured by the Miranda warning waiver signed by Defendant. The Miranda warning waiver was not read out loud to Defendant and it is not clear that he was able to read the waiver form in light of his admission that he is dyslexic and "it mixes up in my eyes." The oral Miranda warning given to Defendant that he had a right to an attorney before (emphasis added) questioning, improperly suggests a restriction of his right to an attorney during (emphasis added) questioning and therefore, the incriminating state-ments obtained from that interview must be suppressed.

Conclusion
I will conclude by simply noting that this many years after rendition of the Miranda decision, this court is addressing the issue of the sufficiency of the Miranda warnings given to Modeste, despite the clear pronouncements by the Florida Supreme Court and the United States Supreme Court that specify what those warnings must include. It appears that the reason for the judicial exertions by this court and others regarding this issue so long after Miranda result from the insistence of law *805 enforcement agencies on writing their own versions of the warnings as they think they should be given, rather than adopting the versions approved by the United States Supreme Court and the Florida Supreme Court.
Now the majority in the instant case has adopted its own version of the warnings, which provides that the individual has "the right to an attorney, and that if he cannot afford an attorney one will be appointed for him." It is readily apparent from the majority opinion that it has done nothing more than adopt the pre-Miranda FBI warnings mentioned in the Solicitor General's letter quoted in the Miranda opinion. What is quite remarkable about the majority's adoption of that version of the warnings is the fact that those warnings are not even used by the FBI anymore. As I have previously noted, the FBI revised its standard warnings to comply with the requirements of Miranda by including the specific warning: "You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning." Duckworth, 492 U.S. at 203 n. 4, 109 S.Ct. 2875 (emphasis added). Simply put, the Florida Supreme Court has approved the warnings used by the Metro Dade Police Department, which are very similar to the revised, post-Miranda version of the FBI warnings approved by the United States Supreme Court. Those are the warnings that should be given to fulfill the requirements of Miranda in criminal cases because they are a "fully effective equivalent" of what the Court in Miranda clearly said is required.
I note that the Second District Court has decided that advising a defendant that "[y]ou have the right to the presence of an attorney" is sufficient. See McCree v. State, 982 So.2d 1278 (Fla. 2d DCA 2008). This warning encompasses the essence of Miranda and comes directly from the Miranda decision. If the Florida Supreme Court feels inclined to adopt another standard for the Miranda warnings, I believe that the warnings approved by the Second District Court in McCree constitute the bare minimum that should be given a defendant in order to comply with Miranda.
The majority claims that the warnings it adopts are a fully effective equivalent of the warnings required by Miranda. Even if these warnings could be considered to be a sufficient equivalent, those are not the warnings that were given to Modeste. Instead, Modeste was advised, before the interrogation began, that he had the right to talk to an attorney, which may be accomplished by electronic means rather than in person. As the court explained in Powell, the right to talk to a lawyer before questioning is derivative of the greater right to have the attorney present during questioning and is not the functional equivalent of the warnings required by Miranda.
Even more troubling is the fact that the police officers knew the correct warnings to give Modeste because they possessed a waiver form containing the correct warnings, which they had Modeste sign. When the officers presented the form to Modeste, Modeste said he had trouble reading. Rather than simply read the form to Modeste, the officers orally gave him a muddled and inaccurate warning that, in my view, does not come close to being a "fully effective equivalent" of the warning required by Miranda. I cannot give my imprimatur to this kind of sloppy police work. I think the trial judge got it right and the order of suppression should be affirmed.
I believe that the majority decision directly conflicts with Seward, Powell, Martin, Ripley, West, Franklin, and Roberts. I also believe the following questions *806 should be certified to the Florida Supreme Court as matters of great public importance:
IN ORDER TO COMPLY WITH MIRANDA, DO THE POLICE HAVE TO INFORM THE DEFENDANT THAT HE OR SHE HAS THE RIGHT TO THE PRESENCE OF COUNSEL DURING QUES-TIONING?
DOES THE FAILURE TO PROVIDE EXPRESS ADVICE OF THE RIGHT TO THE PRESENCE OF COUNSEL DURING QUESTIONING VITIATE MIRANDA WARNINGS THAT ADVISE OF THE RIGHT TO TALK TO A LAWYER BEFORE QUESTIONING?
I note the second question is part of the same question certified in Powell. In Powell, the warnings given to the defendant included the clause: "You have the right to use any of these rights at any time you want during this interview." 969 So.2d at 1064. Because the warnings given to Modeste did not include this clause, or one similar to it, the last part of the question certified in Powell has been omitted.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The written waiver form included a provision advising the suspect "[Y]ou are entitled to talk to an attorney now and have him present now or at any time during questioning."
[3] In Octave v. State, 925 So.2d 1128 (Fla. 5th DCA 2006), we cited to Maxwell for the proposition that advising a suspect generally of the right to counsel is insufficient to apprise the suspect of the right to have a lawyer present during questioning. Accordingly, to the extent Octave is inconsistent with our decision today, we recede from that decision as well.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Approximately four pages of the majority's opinion is devoted almost exclusively to discussion of the FBI's warnings and practices.
[3] The other two cases aside from Miranda and Westover were Vignera v. New York, and California v. Stewart.
[4] The Solicitor's General letter provided:

The standard warning long given by Special Agents of the FBI to both suspects and persons under arrest is that the person has a right to say nothing and a right to counsel, and that any statement he does make may be used against him in court. Examples of this warning are to be found in the Westover case ...
[5] See Windsor v. United States, 389 F.2d 530 (5th Cir.1968).
[1] I have not discussed the decisions rendered by the Federal Circuit Courts because there is a split among those courts regarding the issue whether it is necessary to expressly advise a defendant that he has the right to have counsel present during questioning. Although I have not taken a precise count, there seem to be as many decisions going one way as the other. In any event, I believe that the United States Supreme Court has the final word and, therefore, I have concentrated my discussion on its decisions. But one brief word about the decision in United States v. Lamia, 429 F.2d 373 (2d Cir. 1970), is in order. The majority suggests Lamia is significant because it was cited by the Court in California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). However, Lamia was merely cited in Prysock for the proposition that the Miranda warnings do not have to be exactly worded as provided in the Miranda opinion; Lamia was not cited by the Court for the proposition that it is not necessary to expressly advise the defendant that he has the right to have counsel present during questioning. Indeed, as I will discuss infra, the Court in Prysock specifically held that the warnings given in that case complied with Miranda because they included the warning that the defendant had the right to have counsel present during interrogation.
[2] Parenthetically, I note that the failure to advise a defendant of his right to counsel during interrogation does not result in reversal per se of his conviction because defective Miranda warnings are subject to a harmless error analysis. See Thompson v. State, 595 So.2d 16, 18 (Fla.1992) ("We recognize, of course, that the erroneous admission of statements obtained in violation of Miranda is subject to harmless error analysis."); Caso v. State, 524 So.2d 422, 425 (Fla.1988) ("The erroneous admission of statements obtained in violation of Miranda rights is subject to harmless error analysis."); Williams v. State 976 So.2d 1197 (Fla. 2d DCA 2008).