GRIFFIN, J.
 

 Juan Acevedo [“Acevedo”] appeals his conviction of burglary of a dwelling, deal
 
 *704
 
 ing in stolen property, and grand theft. Acevedo argues that the trial court erred by denying his motion to suppress statements that he made to law enforcement. He contends that law enforcement gave a defective Miranda
 
 [1]
 
 warning by failing to advise him of his right to have counsel present during questioning. He is correct that, under the decision of the Florida Supreme Court in
 
 State v. Powell,
 
 998 So.2d 531 (Fla.2008),
 
 cert. granted,
 
 — U.S. -, 129 S.Ct. 2827, 174 L.Ed.2d 551 (2009), the
 
 Miranda
 
 warning he was given was defective because he was told only that he had a right to counsel, not that he had a right to counsel before being interrogated and during interrogation. 998 So.2d at 535;
 
 see also Modeste v. State,
 
 4 So.3d 1217 (Fla.2009) (quashing decision of this Court in
 
 State v. Modeste,
 
 987 So.2d 787 (Fla. 5th DCA 2008) (en banc)).
 
 [2]
 

 In an amended three-count information, the State charged Acevedo with burglary of a dwelling, dealing in stolen property, and grand theft of property valued at $300 or more but less than $20,000. Prior to trial, Acevedo filed an amended motion to suppress admissions, confessions, and statements. As grounds for suppression, Acevedo asserted that his waiver of
 
 Miranda
 
 rights was involuntary because he was intoxicated at the time of waiver. The trial court conducted a hearing on Acevedo’s motion to suppress, during which it heard testimony from Detective Alfonso Williams [“Detective Williams”] and Acevedo.
 

 According to Detective Williams, he investigated Acevedo in relation to the burglary since an initial victim report indicated that Acevedo had prior knowledge that the victims would be away from their home. Detective Williams explained that, upon learning that Acevedo had pawned a Fossil watch, he met one of the victims at the pawn shop, who identified the Fossil watch as belonging to her husband.
 

 Detective Williams stated that he eventually located Acevedo at his mother’s house. He testified that, with permission and direction from Acevedo’s mother, he and another officer entered the home and proceeded to Acevedo’s bedroom. He stated that Acevedo was “sitting on the bed in the process of getting up” when they entered the bedroom. Detective Williams testified that he informed Acevedo that he was a suspect in a burglary case and asked if he would “cooperate and go back to the police department for an interview.” Detective Williams confirmed that he also informed Acevedo that he did not have to go to the police department. Detective Williams stated that Acevedo agreed to cooperate.
 

 According to Detective Williams, once at the police department, he escorted Acevedo to an interrogation room. Acevedo asked whether he was going to be placed under arrest and whether he was going to jail, to which Williams replied that he was not sure. He then conducted an interview of Acevedo.
 

 The audiotape of the interview was entered into evidence during the hearing and published for the trial court. The following exchange took place between Detective Williams and Acevedo concerning
 
 Miranda
 
 rights:
 

 
 *705
 
 Q. Okay. This is in regards to Alta-monte Springs case number 2008-1416. The time is ten o’clock.
 

 Mr. Acevedo, before we get started I’m going to advise you of your rights, and you have a right to remain silent. Anything you say will be used against you in court as evidence. You have a right to an attorney. If you can’t afford one, one will be appointed to you. Do you understand your rights?
 

 A. Yes, sir.
 

 Q. I appreciate your cooperation, for you willing to talk. Thank you for that. What I’m going to do here is get you to sign this
 
 Miranda
 
 card right here, just basically saying that you’re willing to talk to me. Put your signature there. And today’s date is the 20th, put today’s date the 20th.
 

 Thereafter, during the course of the interview, Acevedo confessed to having broken into the victims’ home, to having taken two DVD players, DVDs, a Fossil watch, and some prescription pills, and to having pawned the Fossil watch. Detective Williams repeatedly asserted that Acevedo took other missing items, but Acevedo repeatedly denied having taken the other missing items.
 

 Detective Williams testified about the manner in which he
 
 Mirandized
 
 Acevedo as follows:
 

 Q. Now, we heard you read him
 
 Miranda
 
 on the interview, and do you use a card when you read Miranda?
 

 A. Yes.
 

 Q. Did you use a card that day?
 

 A. Yes.
 

 Q. Is it the same card that you always use?
 

 A. Yes, ma’am.
 

 Q. Okay. And did you have him sign the card after you read it to him?
 

 A. That is correct.
 

 Q. Do you have his signed card with you today?
 

 A. No, ma’am.
 

 Q. And why is that?
 

 A. Somewhere during the transition from upstairs in the investigation room to the records vault it got misplaced. We don’t have the card.
 

 Q. Okay. So you don’t have it anymore?
 

 A. No, ma’am.
 

 Q. But do you use the same
 
 Miranda
 
 card every time you
 
 Mirandize
 
 someone?
 

 A. Yes, ma’am.
 

 The State attempted to enter into evidence an unsigned example of the
 
 Miranda
 
 card that is used by the police department. Defense counsel objected to the admission of the unsigned
 
 Miranda
 
 card, and the trial court sustained defense counsel’s objection. On cross-examination, Detective Williams testified that he did not read verbatim from the
 
 Miranda
 
 card but rather summarized the rights.
 

 The issue presented in this case has been the subject of two recent decisions of the Florida Supreme court,
 
 State v. Powell
 
 and
 
 Modeste v. State.
 
 The Supreme Court of the United States has accepted jurisdiction of the
 
 Powell
 
 decision, which may resolve the issue. Meanwhile, we must apply
 
 Powell.
 
 The
 
 Miranda
 
 warning given to Acevedo does not meet the requirements of
 
 Powell.
 

 A harmless error analysis does apply to the “erroneous admission of statements obtained in violation of
 
 Miranda.” Powell,
 
 998 So.2d at 541-42. In order for the error to be harmless, an appellate court “must find that beyond a reasonable doubt the admission of the confession did not affect the jury’s verdict.”
 
 Id.
 
 at 542. Acevedo contends that the record evi
 
 *706
 
 dence, absent his statements, does not establish guilt beyond a reasonable doubt for any of the charged crimes. Acevedo’s statements consisted of him confessing to having broken into the victims’ house and taken DVD players, DVDs, a Fossil watch, and prescription pills as well as to having pawned the Fossil watch. Absent Acevedo’s statements, the record evidence indicates that Acevedo (1) knew the victims (2) had been to the victims’ home on multiple occasions, (3) had done some work for the victims, (4) knew that the victims were going to be out of town, and (5) had pawned a Fossil watch, which was identified by the victims’ as one of the items that had been taken from their home. Given the nature of this evidence, it is impossible to say that Acevedo’s statements did not affect the jury’s verdict. Although there may be sufficient evidence to support a conviction without Acevedo’s statements, the erroneous admission of Acevedo’s statements obtained in violation of
 
 Miranda
 
 was not harmless error.
 

 REVERSED and REMANDED.
 

 MONACO, C.J., and TORPY, J., concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . We hold that when an individual is adequately advised of his right to remain silent, anything he says can be used against him, he has the right to an attorney, and if he cannot afford an attorney one will be appointed for him,
 
 Miranda
 
 does not require that the suspect also be expressly informed he has the right to have counsel present during interrogation.
 

 State v. Modeste,
 
 987 So.2d at 791.