[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10711

Non-Argument Calendar

_____

JOSEPH MODESTE,

                                                    Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                    Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cv-01360-CEM-LHP

_____

Before JORDAN, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Joseph Modeste, a Florida prisoner, appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. We granted a certificate of appealability ("COA") as to: (1) whether the state trial court unreasonably applied *Florida v. Powell*, 559 U.S. 50, 53 (2010), when it found that the *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings Modeste received adequately informed him of his right to have counsel present during his police interrogation; and (2) whether the district court erred in finding that his trial counsel was not ineffective in failing to investigate and present evidence regarding the history and reputation for violence of one of Modeste's victims because Modeste could not show he was prejudiced by such omission. After review, we affirm.

## I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 2004, a state grand jury indicted Modeste with two counts of first-degree murder with a firearm stemming from the deaths of Arthur and Betty Williams. After his arrest, police officers Sergeant Tony Nova and Detective Torrance Slaughter interrogated Modeste. At the beginning of the interrogation, Sergeant Nova stated:

I mean you have the right to remain silent. . . . I'm sure you know all these . . . rights. . . .

You know anything you say can be used held against you in a court of law. . . . You're entitled to talk to an attorney and if you want one you can ask for an attorney. If you can't afford one, you know, they can appoint you one. . . . Of course you . . . you can talk to an attorney first before talking to us. You know I . . . can tell you that. . . we'll start talking after you . . . you understand these things, . . . Torrance is . . . he's straight up when he talks to you that way. Understand what I'm saying?

Modeste replied, "Alright," and Sergeant Nova continued:

If at any time you feel uncomfortable or think we're trying to persuade you to say something you stop talking bro. This is all on you. We're gonna give you . . . we're giving you an opportunity to, you know, to say what you gotta say. . . . You . . . understand what those things are . . . the things . . . I told you? Okay. . . . do you understand that we're not trying to force you to talk either.

Modeste replied, "Right," and Sergeant Nova stated, "That is totally up to you." Modeste again replied, "Alright." Then, Sergeant Nova asked, "So I'm gonna ask you straight up . . . do you wanna talk to us?" To which Modeste replied, "I ain't got no problem." Officers then handed Modeste a form outlining his *Miranda* rights. Modeste expressed that he had dyslexia, and officers verbally confirmed with Modeste that he understood his rights, asking

him if he understood that he had the right to remain silent. Modeste stated, "Right." Sergeant Nova stated, "and you did . . . you do say you wanna talk to us, you can sign this and that's all it says is that you wanted to talk to us. It's up to you." Modeste stated, "I don't think I have a problem with it," and signed the *Miranda* form. Sergeant Nova checked the boxes on the *Miranda* form indicating that Modeste understood his rights and that Modeste wanted to speak to officers, and Modeste again verbally confirmed that he understood the *Miranda* form.

Modeste continued speaking with the officers and told them that he rented an apartment to Arthur and his wife Betty, but they stopped paying rent, so Modeste tried to evict them. The day of the incident, Arthur and Betty invited Modeste over to the apartment under the guise that they would pay their past due rent, but when Modeste entered the apartment, Arthur threw a machete and a bar stool at him as Betty yelled at him. Modeste then showed the couple the firearm that he regularly carried with him, explaining that he had been attacked and shot in the past, and always carried a firearm for protection. Modeste stated that after Arthur threw the bar stool at him, Betty handed Arthur a knife, prompting Modeste to begin shooting toward the couple to protect himself. During the initial shooting, Betty fell and Arthur escaped the apartment through a broken window. Modeste followed Arthur outside and continued shooting at him. When officers asked why Modeste kept shooting at Arthur as he ran away, Modeste explained that he thought that he and his family would have died if Arthur and Betty

survived because of Arthur's criminal history of being involved with gangs and selling drugs on the property.

Modeste later moved to suppress the statements he made to police, arguing that the officers did not clearly inform him that he was entitled to counsel during the interrogation, in violation of *Miranda*. The trial court initially granted Modeste's motion to suppress on that basis. The state appealed this decision, and Florida's Fifth District Court of Appeal (hereinafter, "Florida appellate court") reversed the trial court, finding that Modeste's *Miranda* warnings were sufficient. *State v. Modeste*, 987 So. 2d 787 (Fla. 5th Dist. Ct. App. 2008). Modeste appealed and the Florida Supreme Court reversed, agreeing with the trial court that Modeste's *Miranda* warnings were inadequate. *Modeste v. State*, 4 So. 3d 1217 (Fla. 2009). In so finding, the Florida Supreme Court relied on its then-precedent in *State v. Powell*, 998 So. 2d 531 (Fla. 2008), where the court concluded that a defendant's *Miranda* warnings were insufficient where officers did not explicitly inform the defendant that he had a right to have counsel present during questioning.

As a result, the Florida appellate court vacated its prior opinion and affirmed the trial court's order granting Modeste's motion to suppress. Meanwhile, the Supreme Court of the United States granted a petition for writ of certiorari to review the *Powell* decision. This prompted the state to move the Florida appellate court to withdraw its mandate and hold the case in abeyance until *Powell* had been resolved. The Florida appellate court granted the state's motion.

Then, in 2010, the Supreme Court reversed the *Powell* decision. *Florida v. Powell*, 559 U.S. 50 (2010). The Court held that an officer's statement to a suspect during an interrogation that he had the right to consult an attorney before answering any questions, and that the suspect could invoke that right at any time during the interview, satisfied *Miranda*. *Id*. at 53. Following this decision, the Florida appellate court reversed the trial court's order granting Modeste's motion to suppress and directed the trial court to reconsider the motion in light of the new *Powell*[1] decision. *State v. Modeste,* 66 So. 3d 386 (Fla. 5th Dist. Ct. App. 2011).

Upon remand, the trial court denied Modeste's motion to suppress, reasoning that he was adequately informed that he was entitled to an attorney and that he could speak to his attorney before and during the interrogation. Relying on *Powell*, the court found that the *Miranda* warnings given to Modeste did not suggest a limitation on his right to an attorney, but instead conveyed that his right to an attorney became effective prior to questioning.

Modeste's case proceeded to a jury trial in January 2014. At trial, Modeste testified that when he started renting to Arthur, he was concerned about the fact that Arthur had just been released from prison. He stated that although he was bothered by that fact, he did not want to turn his back on someone in need, and Arthur ultimately seemed like a nice guy. Once Arthur and Betty moved in, Modeste felt that his relationship with the couple began to

---

[1] Moving forward, references to *Powell* in this opinion refer to the Supreme Court decision, rather than the now overturned Florida decision.

deteriorate. According to Modeste, Arthur stopped paying rent and began selling drugs at the apartment, which prompted Modeste to begin eviction paperwork. Modeste also stated that he discovered Arthur siphoning electricity from another apartment into his apartment, causing Modeste to call the police and have Arthur arrested. On one occasion, Arthur threatened to kill Modeste if he came onto the property.

Modeste also called St. George Philogene to testify. Philogene helped Modeste with his apartment's roofing needs. On one day, he and another individual went to finish a roofing job at Modeste's apartment. Philogene borrowed Modeste's van to go to the apartment, and when he and his assistant began setting up his equipment on the roof, a man appeared on the roof with a gun in his hand. Philogene stated the man came up the ladder, stood on the roof and looked around, and then left all while holding a gun. Philogene and his assistant left the roof and refused to finish the job, and told Modeste it was too dangerous for them to continue working. Philogene could not confirm the identity of this man after looking at an autopsy picture of Arthur.

Ultimately, the jury found Modeste guilty of the lesser included offenses of second-degree murder on both counts. In April 2014, the trial court sentenced him to 55 years' imprisonment for each offense, to be served concurrently.

Modeste appealed, arguing that the trial court erred in denying his motion to suppress because his *Maranda* warnings did not convey that he had the right to have an attorney present during his

interrogation. The Florida appellate court affirmed Modeste's convictions and sentences in an unelaborated *per curiam* opinion in March 2016. Modeste filed a petition for a writ of certiorari with the Supreme Court, which the Court denied. *Modeste v. Florida*, 580 U.S. 845 (2016).

Following other filings not relevant to the current appeal, Modeste filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief. He argued, among other things, that his trial counsel was ineffective for failing to introduce evidence of Arthur's propensity for, and specific acts of, violence in order to present an adequate self-defense theory. He contended that his trial counsel failed to adequately investigate Arthur's prior history of drug use, drug dealing, and violence, and that such failure prejudiced his defense. The post-conviction court denied most of Modeste's claims but granted him an evidentiary hearing, in relevant part, on his claim that his trial counsel failed to investigate Arthur's history of violence.

An evidentiary hearing was held in March 2019. There, Modeste's daughter testified that, on one occasion, she heard Modeste and Arthur arguing. Because she was in a car and not physically with Modeste, she only heard Arthur yelling, and although she could not hear specific words, it sounded negative.

Next, Gaveale Hansley testified that he used to sell crack-cocaine to tenants in Modeste's apartments, including Arthur. He witnessed Modeste and Arthur arguing outside the apartment on

one occasion about unpaid rent, and he heard Arthur threaten to cut off Modeste's legs.

Modeste also testified that, prior to trial, he discussed with his attorney the fact that Arthur had recently been released from prison. When Modeste rented the apartment to Arthur, he did not know that Arthur had such a long criminal record, and he did not learn about Arthur's fourteen felony convictions for drug-related offenses until after the trial. However, while Arthur lived in the apartment, he told Modeste that he had quit his job with a moving company and was going to make money selling drugs. Modeste told Arthur that he could not sell drugs on the property, and Arthur told Modeste that, if he ever came back to the apartment, he would cut Modeste's legs off. Modeste also knew that Arthur had a machete. He explained that he spoke to his attorney about his interactions with and fear of Arthur before trial.

On cross-examination, the state asked Modeste what prior acts of violence he believed his trial counsel should have introduced at trial. Modeste pointed to an incident in which Arthur chased a roofer at the apartment complex with a gun. However, Modeste confirmed that the jury did hear evidence of that incident.

Finally, the state called Modeste's trial counsel to testify, who stated that he researched Arthur's background and knew Arthur was a convicted felon, but he was not aware of any prior violent criminal acts Arthur committed that could have been introduced at trial. On cross-examination, he stated that he did not believe

Arthur's prior drug convictions were relevant to the issue of self-defense.

After the evidentiary hearing, the post-conviction court denied Modeste's remaining claims. The court determined that Arthur's prior, non-violent drug convictions were not relevant to a theory of self-defense and, in any event, Modeste did not have knowledge of specific acts of violence committed by Arthur beyond those Modeste already testified to at trial. Thus, Modeste's counsel did not perform deficiently nor could Modeste demonstrate prejudice. Modeste appealed the denial of his Rule 3.850 motion, and the Florida appellate court affirmed in an unelaborated *per curiam* opinion.

Modeste then filed the present 28 U.S.C. § 2254 habeas petition, in which he argued, among other things, that: (1) his constitutional rights were violated when officers did not properly apprise him of his right to have counsel present during questioning, in violation of *Miranda* and *Powell*; and (2) his trial counsel performed ineffectively for failing to investigate and introduce evidence about Arthur's prior history of violence. The state opposed Modeste's petition.

Ultimately, the district court denied Modeste's habeas petition. The court first found that the trial court's denial of Modeste's motion to suppress was not an unreasonable application of *Miranda* or *Powell* because the warnings given to Modeste could reasonably be understood to establish the time at which his right to have an attorney present became effective, and the warning could

not be understood as a restriction upon Modeste's right to counsel during questioning. Thus, the state court's denial was not objectively unreasonable, an unreasonable application of *Miranda* or *Powell*, nor was it an unreasonable determination of the facts.

To Modeste's ineffective assistance of counsel claim, the district court ruled that the state court's denial of the claim was not contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984), or an unreasonable determination of the facts. It noted that no evidence was presented at the evidentiary hearing demonstrating that Arthur had any prior violent felony convictions, and Modeste himself did not learn about Arthur's fourteen prior drug convictions until after trial. Moreover, Modeste's counsel did present evidence that Arthur had been released from prison shortly before renting an apartment from Modeste and had threatened Modeste before the incident. Thus, Modeste could not establish deficient performance or prejudice. As a result, the court denied the petition and declined to issue a COA.

Modeste moved this Court for a COA, which this Court granted with respect to whether the police's interrogation of Modeste violated *Miranda* and *Powell*, and whether Modeste's trial counsel performed ineffectively for failing to investigate and present evidence regarding Arthur's history and reputation for violence on the basis that such evidence was barred by Florida law.

## II.          STANDARD OF REVIEW

We review *de novo* the district court's denial of a § 2254 habeas petition, ineffective assistance of counsel claims, and the

district court's determination that the state court acted in accordance with federal law, reasonably applied federal law, and made reasonable factual findings. *Williams v. Allen*, 598 F.3d 778, 788 (11th Cir. 2010). It is the petitioner's burden to establish his entitlement to habeas relief. *Id.*

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may only grant habeas relief with respect to a claim adjudicated in state court if the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to clearly established federal law if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court of the United States and nevertheless arrives at a result different from its precedent." *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) (internal quotation marks omitted). A state court unreasonably applies clearly established federal law if it identifies the appropriate legal rule but unreasonably applies it to the facts of the case, or when it unreasonably extends or declines to extend, a legal principle from a Supreme Court case to a new context. *Id.* "[C]learly established law" under § 2254(d) refers to the holdings of the Supreme Court at the time of the relevant state court decision. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004). Where the

Supreme Court has not given a clear answer to the question presented, the state court cannot be said to have unreasonably applied clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Essentially, the state court's decision "must be so obviously wrong that its error lies beyond any possibility of fairminded disagreement." *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022) (*en banc*) (internal quotation marks omitted).

A state court's factual findings are presumed correct. *Williams*, 598 F.3d at 788. The petitioner can only overcome this presumption of correctness by rebutting it with clear and convincing evidence. *Id.* As such, our review of a state court's factual findings is even more deferential than a clear error standard of review. *Id.*

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) (internal quotation marks omitted). Even when left with a "firm conviction" that the state court's decision was incorrect, we cannot grant a habeas relief unless the state court's decision was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (quotation marks and citations omitted).

When the final state court to adjudicate the merits of a petitioner's claim affirms or denies a lower court's decision without explaining its reasoning, the federal habeas court should "look through" the unelaborated decision to the last reasoned state court decision that provides relevant reasonings. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Then, the federal habeas court should assume that the unexplained decision adopted that same reasoning. *Id.*

### III.    ANALYSIS

####    A.  *The State Court Did Not Act Contrary to, or Unreasonably Apply, Miranda or Powell.*

Before the start of a custodial interrogation, an individual must be given their *Miranda* warnings, which includes the right to have an attorney present during questioning. *Miranda*, 384 U.S. at 479. Law enforcement officers must clearly inform the individual that "he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id.* at 471. After receiving these warnings and having the opportunity to exercise his rights, "the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Id.* at 479. However, "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.*

There is no exact formulation of the *Miranda* warnings that must be given and reviewing courts "need not examine *Miranda* warnings as if construing a will or defining the terms of an

easement." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989). Rather, in evaluating the sufficiency of a *Miranda* warning, courts should determine whether the warnings reasonably convey to a suspect his *Miranda* rights. *Id.*

In *Powell*, police gave the following warnings to the defendant: "You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview." 559 U.S. at 53-54. The Supreme Court determined that the police's statement that the defendant had a right to talk to an attorney before answering questions, taken together with the second statement that the defendant had the right to exercise his rights at any time during the interrogation, "reasonably conveyed" to the defendant his "right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 62. The Court noted that, under these warnings, it would be counterintuitive for a defendant to believe that his attorney would not be present throughout the interrogation because that would require him to exit and reenter the interrogation room between each question to seek his attorney's advice. *Id.* at 62-63.

Moreover, the Court determined that the term "before" in the warnings "merely conveyed when [the defendant's] right to an attorney became effective—namely, before he answered any questions at all," and did not indicate any restriction on counsel's presence once the questioning began. *Id.* at 63. Instead, the warnings

stated that the defendant could seek his attorney's advice before responding to *"any* of the officers' questions" and *"at any time . . . during* the interview," and therefore, they properly "communicated that the right to counsel carried forward to and through the interrogation." *Id.* (brackets omitted).

On appeal, Modeste argues that the state court unreasonably applied *Powell* when it determined he was properly informed of his right to have counsel present during his interrogation, as required by *Miranda*. He argues that the warnings given by police in this case were not analogous to those given in *Powell* because the warnings in this case did not include a "catch-all" phrase, and the use of the word "before" in this case could only be read as a limitation upon his right to counsel during the interrogation.

Here, we conclude that the state court did not act contrary to, or unreasonably apply, clearly established federal law when it concluded that Modeste was adequately informed of his right to have counsel present during his interrogation. Officers gave Modeste the following warnings: "Of course you . . . you can talk to an attorney first before talking to us. . . . we'll start talking after you . . . you understand these things, . . . If at any time you feel uncomfortable or think we're trying to persuade you to say something you stop talking bro. This is all on you. . . . do you understand that we're not trying to force you to talk either." Under *Powell*, it was not objectively unreasonable for the state court to conclude that the use of the words "first" and "before" in Modeste's *Miranda* warnings informed him that his right to counsel attached

before the interrogation began and was not limited thereafter. When reading these statements collectively, it was not unreasonable for the state court to conclude that Modeste had been reasonably apprised of his right to counsel during the interrogation. *Duckworth*, 492 U.S. at 203; *Powell*, 559 U.S. at 53-54, 62-63.

Although Modeste's warning did not contain a "catch-all" provision identical to that in *Powell*, the officers informed Modeste that he could stop questioning at any time and indicated that they would only question him "after" he understood his rights. The warnings could not be read as a restriction upon Modeste's right to counsel. *Powell*, 559 U.S. at 63. Thus, the state court's decision was not objectively unreasonable, and habeas relief on this ground is unwarranted. *Lockyer*, 538 U.S. at 75-76.

### B. *Modeste's Counsel Did Not Provide Ineffective Assistance.*

To establish ineffective assistance, a petitioner must show that: (1) "counsel's performance was deficient;" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Counsel's performance is presumed reasonable, and to overcome this presumption, the petitioner must demonstrate "that no competent counsel would have taken the action that his counsel" took. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Importantly, when analyzing a claim of ineffective assistance under § 2254(d), our review is "doubly" deferential to counsel's performance. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

We have explained that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (internal quotation marks omitted). Although an ineffective-assistance-of-counsel claim is a federal constitutional claim, when the validity of the claim that counsel failed to raise turns on state law, we must defer to the state's construction of its own law. *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1295 (11th Cir. 2017). Importantly, trial counsel cannot be deemed ineffective for failing to raise meritless arguments. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

Under Florida law, a defendant may introduce evidence of the victim's character to show that the victim of the crime was the aggressor and that the defendant acted in self-defense. *Hedges v. State*, 667 So. 2d 420, 422-23 (Fla. 1st Dist. Ct. App. 1996). To properly introduce such evidence at trial, the defendant must have known "of the victim's violent acts or of his violent reputation at the time of the alleged offense." *Id.* The "defendant's knowledge of a victim's specific acts of violence is a precondition to

admissibility." *Antoine v. State*, 138 So. 3d 1064, 1076 (Fla. 4th Dist. Ct. App. 2014).

On appeal, Modeste contends the district court erred in denying his ineffective-assistance-of-counsel claim because the character evidence he wanted to introduce was not barred under Florida law and the failure to present such evidence prejudiced his defense. To the issue of prejudice, he contends that Arthur's propensity for violence was the crux of his self-defense theory, and the failure to explore and explain that issue to the jury negatively impacted his defense to the jury. He also asserts that the district court made two erroneous factual findings: (1) that no evidence presented at the evidentiary hearing demonstrated that Arthur had violent felony convictions and that Modeste did not learn of Arthur's felony convictions until after the shooting, and (2) that Modeste's counsel did present evidence of Arthur's past violence.

Here, the district court did not err in finding that Modeste's trial counsel was not ineffective. As an initial matter, the district court did not make independent factual findings, but instead deferred to the state court's factual findings, as required under the AEDPA. *Williams*, 598 F.3d at 788. The record clearly reflects that Modeste did not know if Arthur had violent felony convictions and did not know that Arthur had fourteen felony drug convictions until after trial, and trial counsel introduced evidence at trial of the threats Arthur made toward Modeste. Thus, Modeste's challenge against the district court's factual findings, or reliance on the state court's factual findings, is meritless.

Additionally, the district court did not err in concluding that the state court's denial of Modeste's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, *Strickland*. First, Modeste's counsel did present evidence of Arthur's violent tendencies through the testimony of Philogene and Modeste. Modeste also mentioned Arthur's recent release from prison and sale of drugs on the property. Additionally, had Modeste's counsel moved to introduce any additional evidence of Arthur's violent tendencies, such motion would have been denied. The record evidence shows that Modeste did not know of Arthur's fourteen felony convictions until after trial, and he did not have any knowledge of any other of Arthur's alleged violent tendencies. Modeste's knowledge of Arthur's specific acts of violence is a precondition to admissibility, meaning Modeste's counsel could not have made a meritorious argument at trial to bring in this purported evidence. *Antoine*, 138 So. 3d at 1076. As such, Modeste's counsel cannot be deemed ineffective for not raising a meritless argument. *Bolender*, 16 F.3d at 1573.

For the same reasons, Modeste cannot establish prejudice. The jury heard evidence of Arthur's past violent behavior, and Modeste cannot establish that, had the jury heard more, the outcome of his proceedings would have been different. *Strickland*, 466 U.S. at 694. Thus, habeas relief on this ground is not warranted.

## IV.   CONCLUSION

For the reasons outlined above, we **AFFIRM** the district court's denial of Modeste's § 2254 habeas petition.